David G. Matthews
PO Box 25177
GMF, Guam 96921
671-789-0818



FILED
DISTRICT COURT OF GUAM

NOV 0 9 2007

JEANNE G. QUINATA
Clerk of Court

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

David G. Matthews,

    Plaintiff,

vs.

United States

    Defendant.

CV- 07-00030

COMPLAINT

**Jurisdiction**

The district court of Guam has jurisdiction in this matter. The plaintiff has exhausted administrative remedies, a precondition for filing a claim under the Federal Tort Claims Act. On May 18, 2007, the plaintiff filed an administrative claim with the federal government, i.e., the Secretary of Defense, Secretary of the Navy and COMNAVMAR, Guam. In a letter dated July 13, 2007, the Department of the Navy, which officially assumed responsibility for adjudicating the claim, denied the plaintiff's claim. The claim was filed within the Federal Tort Claims Act statute of limitations. The plaintiff is suing the defendant for intentional infliction of emotional distress and invasion of privacy. Guam law permits recovery for both actions.

**ORIGINAL**

1

## Complaint

The defendant intentionally inflicted extreme emotional distress and invaded the privacy of the plaintiff, David G. Matthews. The defendant's reckless and unlawful conduct irreparably damaged the plaintiff's good name and reputation and compelled the plaintiff to seek early retirement from federal employment, which had significant personal, professional and financial implications.

In April 2002, the plaintiff accepted a GS14 civil service position with COMNAVMAR, Guam. His wife, Debora, son, David, and daughter, Desiree, accompanied him to Guam.

On June 14, 2005, Debora was apprehended by COMNAVMAR security for alleged child abuse in an incident involving Desiree. Later in the evening, the Naval Criminal Investigative Service (NCIS) concluded Debora did not abuse Desiree. On June 15, 2005, the COMNAVMAR executive officer and attorneys stated there was no criminal investigation by the Navy or referral to the Guam Police Department.

On the 15th and 16th of June 2005, the plaintiff and Debora received telephone calls from Mr. Vince Pereda, a Family Advocacy Program (FAP) case manager for the COMNAVMAR Fleet and Family Support Center (FFSC), Guam; and they briefly discussed the incident involving Debora and Desiree. Pereda requested and scheduled an interview for June 17, 2005. A review of FFSC case records reveals Pereda "maintained" case notes as of June 16, 2005. In accordance with (IAW) the Privacy Act (PA) of 1974

2

and Title 5 USC 552a., the term "maintain" includes maintain, collect, use, or disseminate. Title 32, Section 701.108 states, "If information is collected by means other than a form completed by the individual, i.e., solicited over the telephone, the Privacy Act Statement should be read to the individual and if requested by the individual, a copy sent to him/her." During telephonic communications, neither the plaintiff nor Debora were apprised of the Privacy Act Statement.

On June 16, 2005, Pereda discussed the case with Ms. Camacho, Guam Child Protective Service (CPS), after initiating records and without the approval of the plaintiff or Debora.

On June 17, 2005, Pereda interviewed the plaintiff and Debora in the presence of Ms. Camacho, Guam Child Protective Service (CPS). However, he did not apprise them of the PA prior to the interview. During the interview, the plaintiff and Debora asked on a couple of occasions whether they needed an attorney. Both Pereda and Camacho assured them they didn't need an attorney, that there was no criminal case and their only desire was to reunite the family. The plaintiff and Debora responded in good faith to questions from Pereda and Camacho, as they believed they were in a client-protected, clinical interview. They were never apprised of the potential consequences of their discussions, which is the purpose of the PA and the FAP Program Description document.

IAW the Privacy Act, 3.(b) Conditions of Disclosure, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior

written consent of, the individual to who the record pertains,..." On June 17, 2005, the command allowed Ms. Camacho to be present in the plaintiff's and Debora's interview without first apprising them of the PA and receiving their authorization to disclose information to Guam CPS, "another agency" as defined in the Act. On September 1, 2005, during a telephonic discussion between the plaintiff and LT Weinthal, an attorney with Commander, Naval Installations (CNI), Weinthal opined the command could disclose information to CPS in concert with a criminal investigation. There was no criminal investigation.

On June 17, 2005, Pereda also failed to apprise the plaintiff and Debora of the Navy Family Advocacy Program Description, which is a DoD/Navy regulatory requirement.

Pereda failed to apprise the plaintiff or Debora of the PA. However, on June 17, 2005, upon terminating the interview with the plaintiff and Debora, Pereda asked Debora (witnessed by the plaintiff) to sign two documents that he had in his possession, which he stated were required to allow FFSC/CPS to interview Desiree. The plaintiff and Debora later determined the two documents were the Privacy Act statement and the FFSC Program Description. Neither document was explained to the Matthews nor did Pereda request Debora read the documents prior to signing. Pereda knowingly and willingly tricked Debora to sign the forms.

On Aug 12, 2005, after complaining to LCDR Grunawalt, a COMNAVMAR attorney, that the plaintiff and Debora were not apprised of the PA by Pereda, Grunawalt presented

4

the plaintiff with a signed copy of a PA statement that Debora unknowingly signed on June 17, 2005. The copy of the PA statement the plaintiff received revealed Debora signed and dated the form at the bottom on "17 Jun 05." The other date/signature block below Debora's signature was blank. Pereda's signature was not on the document as of August 12, 2005, approximately two months after the June 17th interview.

Upon reviewing their case files after Aug 12, 2005, the Matthews noted Pereda signed and dated the PA statement with the date of "6/17/2005." On the 15th and 19th of August 2005, Debora contacted Pereda. Pereda stated that he failed to inform her of the PA and Navy FAP Program Description on June 17, 2005. Pereda falsified an official document when he "witnessed as a provider" and signed and backdated the Privacy Act statement with the date "6/17/2005." The plaintiff requested a criminal investigation concerning the falsified document, but it appears the defendant attempted to conceal the crime.

NAVPERS 1754/11 (09/03), FFSP FAP Records Review Checklist, states "Documentation that Privacy Act provisions explained and Privacy Act Statement signed by alleged victim, alleged offender, and/or non-offending parent and witnessed by a provider." The FFSC Privacy Act Information sheet contains the following declaration directly above the signature blocks: "I have read and understand the above Important Notice and Privacy Act statement and the routine uses of the information which I provide. My FFSC counselor has explained the content of the Privacy Act statement to me." By signing the statement, Pereda affirmed that he, the "FFSC counselor," explained

5

the content of the Privacy Act. He falsely swore that he properly administered the Privacy Act.

In September 2005, against their many objections and demands to cease and desist from continuing to harass them, and from the objection of Mr. Paul Fisher, the senior COMNAVMAR legal counsel, who argued the Navy had no FAP jurisdiction over federal civilian employees; the Navy placed the plaintiff and Debora in a military tribunal for alleged child abuse. As a result of the tribunal, the plaintiff and Debora were placed in a federal registry as child abusers. Information illegally and unlawfully obtained from the plaintiff and Debora by FFSC, by violating the Privacy Act and Navy FFSC Program Description, was used against them in the tribunal.

Employees shall be protected against arbitrary action (5 USC 1701). The Navy deemed the plaintiff and Debora eligible for a military tribunal merely because they were "eligible beneficiaries" for treatment at military treatment facilities, which is arbitrary and capricious. According to the Navy, local hire federal employees, to include local military retirees who become federal employees (true military treatment facility beneficiaries) are not subject to these tribunals. Furthermore, other stateside-hire employees assigned to, or residing on Anderson Air Force Base, Guam, are not subject to these tribunals. Lastly, the plaintiff and Debora were not "beneficiaries" for treatment. If they decided to use the naval hospital, they paid the fair market rate for services.

On November 10, 2005, the plaintiff asked the following question to Mr. David Lloyd, Director, Family Advocacy Program, Office of the Deputy Under Secretary of Defense: "If an OCONUS FBI agent or State Department employee is suspected of spouse or child abuse and is eligible for treatment at a military treatment facility, is the employee also subject to a mandatory, involuntary FAP CRC?" He replied, "Since this question only arises in OCONUS incidents, I recommend that your attorney contact the Staff Judge Advocate at the installation where the incident has been reported to get the local answer to this question." In a document the plaintiff received from Grunawalt, dated on or about December 2005, he responded, "In accordance with the DoD Directive 6400.1, if the individual is eligible to receive treatment in a military medical treatment facility, then the DoD Directive would apply to them, too." Lloyd, the DoD official, stated it was a local call; Grunawalt stated it was DoD policy.

In an email to Lloyd, the plaintiff asked the following question: "What specific DoD guidance states OCONUS DoD/non-DoD civilians, e.g., State Department, FBI, etc. shall be placed involuntarily in a FAP CRC? I have reviewed the DoD regulation concerning personnel who are eligible for FAP services, but it does not state a civilian employee can be placed involuntarily in a FAP CRC. Please explain." Lloyd replied, "Since this question only arises in OCONUS incidents, I recommend that your attorney contact the Staff Judge Advocate at the installation where the incident has been reported to get the local answers to this question."

In an email to Lloyd, the plaintiff asked the following question: "Why are OCONUS local-hire federal employees exempt from mandatory, involuntary FAP CRC? In theory a local-hire FAP case manager could be the subject of a spouse/child abuse investigation, yet this would not be recorded by the command nor entered into a central registry. In this scenario, a stateside-hire civilian and local-hire civilian may be treated differently for similar allegations. IAW 5 USC 2301, merit system principles, "Employees should be protected against arbitrary action...""" Lloyd replied, "DoD policy does not exempt OCONUS incidents involving local-hire DoD employees from referral to the CRC unless the employee is a foreign national and a Status of Forces Agreement or other treaty takes precedence. In an OCONUS environment there isn't a civilian social services agency similar to the FAP. DoD employees in CONUS incidents are not referred to the CRC because there is a civilian social services agency similar to the FAP, such as a child protective services agency. I recommend that you or your attorney contact the Staff Judge Advocate at the installation where the incident has been reported to get the local answer to this question." Lloyd stated OCONUS local-hire DoD employees are not exempt. This conflicts with Grunawalt's opinion that only stateside-hire employees, those eligible for treatment at military medical facilities, are subject to CRC tribunals.

In his response to the same question, Grunawalt replied, "According to federal case law, the lynchpin of federal personnel management is fairness, i.e., employees who are similarly situated are entitled to similar treatment. However, since OCONUS local-hire federal employees on Guam are not eligible for either base housing or for treatment at the Naval Hospital, they are not similarly situated as stateside hire federal employees. Had

you been singled out as an individual and been treated differently from others similarly situated (i.e. stateside hires) because of race, religion, or political affiliation, then such action would have been truly arbitrary and unlawful."

Grunawalt stated if the plaintiff were treated differently than other stateside hires, then such action would be arbitrary and unlawful. There are many stateside-hire DODEA teachers on Guam; some work at Anderson Air Force base and others at naval installations. If a stateside-hire teacher is suspected of child/spouse abuse and he/she receives logistical support from the Navy, he/she would be placed in a military tribunal. However, if the teacher receives logistical support from Anderson, within the same DODEA command, he/she would not be subject to a tribunal. According to Anderson FAP personnel, stateside-hire employees are not subject to Air Force FAP CRC. They are referred to local law enforcement and/or Guam CPS. Taking Grunawalt's logic and applying it to the plaintiff's situation, the plaintiff was treated differently than similarly situated stateside-hire employees assigned to Anderson Air Force Base.

Lloyd implied cases involving CONUS employees are referred to local child protective services. Guam has a child protective service, yet the plaintiff and Debora were placed in a military tribunal and a federal registry as child abusers.

5 USC 2302 prohibits employers from discriminating against employees on the basis of conduct, which does not adversely affect the performance of the employee. The tribunal was discriminatory in that any perceived misconduct was not related to the plaintiff's job,

nor did any incidents occur during duty hours. Federal employees have a right to privacy during off-duty hours and employers cannot take administrative action against an employee, e.g., place an employee into an involuntary military tribunal, when there is no nexus to his/her job. Furthermore, the plaintiff was not a member of the armed services; he was a federal civilian employee. The plaintiff should have the same employment rights and right to privacy as the 2.6 million other federal employees (as of 2005).

Grunawalt opined that since the plaintiff was eligible for treatment at a military treatment facility, allegations of spouse/child abuse can result in a FAP CRC regardless of the location where the incident allegedly occurred. The plaintiff was accused at the tribunal of spanking his daughter while on vacation in Saipan. There was no nexus to his job that should have resulted in the DoD's invasion of his privacy during off-duty hours; he was being treated differently than other federal employees; and any discipline administered was not excessive and within his parental rights.

In an email to Grunawalt, the plaintiff referenced DoD 6400.1, C2.1.1. PS 2.1, "All newly assigned personnel shall receive an orientation to the FAP, available family support services, and installation FAP policies." Grunawalt replied, "In accordance with the command SORM, newly assigned Navy civilian personnel receive indoctrination training presented by the region HRO office." On December 13, 2005, the plaintiff contacted Mrs. Annie Shimizu, a long time COMNAVMAR HRO specialist. She stated that apprising employees of FFSC is not an HR function or it would have been added to the indoctrination checklist. If the plaintiff, a stateside-hire employee, was to be treated

10

differently than local-hire counterparts and subject to rules/regulations that could have a negative impact on his career as a federal employee, e.g., subject to military tribunals, placed in federal registries, etc., he should have been informed as a condition of employment.

The plaintiff and Debora were concerned with the personal and professional ramifications of a military tribunal and on September 1, 2005, the plaintiff asked Weinthal if they were eligible for Navy legal service support in regards to the military tribunal. Weinthal stated they were eligible; Grunawalt stated they were not. The plaintiff and Debora were not allowed Navy legal assistance, as Grunawalt overruled his higher headquarters, CNI. Military personnel and their families are eligible for military legal assistance in FAP matters. However, the plaintiff, whom the defendant deemed equally eligible as his military counterparts for the military tribunal, was not allowed Navy legal support.

In an email exchange between Grunawalt and Weinthal, CNI, obtained via the FOIA on or about January 2006, Grunawalt made the following comment, "Does it matter that the CRC has already occurred (the case was substantiated on Tuesday your time) and FAP has already enter the Matthews' information into the Navy Central Registry? Can we really un-ring the bell?" This seems to imply that the Navy wrongfully placed the Matthews in a military tribunal. The DoD has failed to clarify the plaintiff's and Debora's involuntary involvement in a military tribunal. Attorney Fisher was adamant that federal employees should not be involved in a military CRC tribunal. Grunawalt used the "eligible beneficiary for treatment at a military treatment facility" as the

cornerstone for their involuntary placement in the military tribunal. Lloyd refuted Grunawalt's logic and stated the DoD policy does not exempt OCONUS local-hire DoD employees, those not eligible for treatment at a military treatment facility.

On or about November 17, 2005, the plaintiff and Debora met with Mr. James Cruz, an investigator with the Guam attorney general's office. Mr. Cruz, who was very familiar with the case, stated that there was no evidence that the plaintiff or Debora committed any crimes. However, the plaintiff and Debora were placed in a military tribunal and a federal registry as child abusers when they were never charged or convicted of any crimes.

The US Constitution guarantees that no person shall be deprived of life, liberty or property without due process. Due process means that no person can be subject to an individualized proceeding (in the plaintiff's case, the military tribunal) in which he or she stands to lose one of the protected interests – in the context of administrative law, either property or liberty – without sufficient procedures to ensure that the governmental action is fundamentally fair.

The plaintiff had both a property and liberty interest at stake. As a government employee, he would suffer a loss without a continued relationship with the U.S. government – his property interest. Furthermore, the Navy FAP instruction, OPNAVINST 1752.2A, mandates that commanders take action against alleged abusers. If he were "substantiated" as an abuser at the military tribunal, he feared losing his job

and/or security clearance and the inability to acquire other federal positions, because his name was placed in a federal registry as a child abuser. In accordance with OPNAVINST 1752.2A, "members...whose cases have been substantiated...shall normally be processed for separation." If he were truly a FAP candidate, he had reason to believe he could be separated from federal service as well. Mr. Fisher, COMNAVMAR legal counsel, opined placement in a federal registry constitutes disciplinary action.

The plaintiff had a liberty interest at stake, because being labeled a child abuser damaged his good name and reputation. After the tribunal, the plaintiff asked CAPT Freeman, the naval base commanding officer, who specifically was calling the plaintiff a child abuser. Freeman replied (witnessed by Debora), "I guess I am." The US Supreme Court has ruled that a person does not have a liberty interest in his reputation alone, but an injury to reputation plus some other significant negative consequence (the plaintiff's property interest above), triggers due process. The "stigma plus" test states that if some governmental action causes a person stigma plus other negative consequences, that person has suffered a deprivation of liberty.

The plaintiff's case is analogous to Miller v. Debuono (90 NY2d 783 (1997)). A nurse's aid was accused of hitting a patient. Under state law, her name was to be placed in a registry maintained by a state agency for the purpose of identifying abusers. The New York Court of Appeals ruled that the aid had a liberty interest at stake. Placement of her name in the registry called into question her reputation, plus it had the effect of limiting

her employment opportunities. Because she had a liberty interest at stake, her due process rights were triggered, and the court ruled that she should have received extensive procedural protections before being placed in the registry.

Below are the procedural protections (due process) mandated in Miller v. Dubuono in relation to the due process (or the lack thereof) the plaintiff received:

1. Notice. Notice must provide the affected party with enough information to respond. The plaintiff had to ask Grunawalt the specific allegations against the plaintiff and Debora and they received only minimal information.

2. Right to counsel. In an e-mail dated July 19, 2005, the plaintiff asked Grunawalt the following: "Request that my attorney and I be allowed to present our defense to the review committee. Who within the Navy chain of command can grant such a request? Let this e-mail serve as my official request to the appropriate Navy official to present my case with my attorney." Grunawalt responded, "Under OPNAVINST 1752.2A neither you nor your attorney are entitled to be present at the CRC meeting..."

3. Pre-Hearing Disclosure or Discovery

4. Cross-Examination. In a letter from Grunawalt, dated on or about December 13, 2005, he stated, "Military offenders, as well as civilian offenders, cannot be represented at the CRC by legal counsel, they are similarly limited in their ability to obtain documents not

14

kept in their own file, and they similarly cannot cross-examine the FAP case manager, or anyone else, at the CRC."

5. Burden of Proof. The burden of proof is generally placed on the party initiating the proceeding. In the case of actions against a private party, the burden is on the agency. In an email, the plaintiff asked Grunawalt the following: "During a FAP case review, who has the burden of proof, the alleged offender or the command?" Grunawalt replied, "No one has the burden of proof to prove anything."

6. Neutral Decision Maker. Parties have a due process right to a neutral decision maker. Agency officials who have personally participated in the development of a case against a party, or who have a significant personal stake in the outcome, are generally prohibited from sitting in judgment in the matter. The plaintiff understands Grunawalt and at least one FFSC employee were voting members (decision makers) at the tribunal. Pereda, who violated the plaintiff's rights, falsified documents and violated federal laws and DoD regulations, provided testimony at the tribunal. During the entire FAP process, there were numerous confrontations between the plaintiff, Grunawalt and FFSC personnel. However, conversely, in an email from Ms. Baza, FFSC, to CDR Beaty, COMNAVMAR executive officer, dated July 26, 2005, she stated, "If the case is heard "here", our primary Line Officer CRC member (LCDR Washington) who is a personal friend of D's shouldn't sit on this particular case review." The defendant stacked the deck against the plaintiff and Debora, and recussed Washington, a standing member of the tribunals.

15

The plaintiff understands Desiree's medical information was discussed during the tribunal. As a federal employee, who should not be subject to a military FAP CRC tribunal, the DoD committed HIPAA violations by discussing Desiree's medical information, showing medical photos, etc, at the tribunal.

The plaintiff was an exemplary employee throughout his federal civil service career. He received numerous performance awards and had no disciplinary actions prior to the military tribunal. The defendant failed to consider the Douglas Factors before placing the plaintiff in the central registry. The central registry is used to screen applicants for various jobs within the federal government.

On December 1, 2005, the plaintiff, using his government computer and government common access card (CAC), sent an email to his supervisor, CAPT (S) Enriquez, stating, "CAPT (S) Enriquez, let this E-mail serve as my official grievance as a federal employee to the involuntary FAP. Placement in a federal registry is an adverse action, because it may have a negative impact on current/future employment and my security clearance. Also, the tribunal's conclusion that I am a child abuser has damaged my good name and reputation. I believe the command's actions are in possible violation of 5 USC 2301 and 2302, equal protection rules and other laws or regulations. I have certain federal protections and rights to due process. What are my rights? Please apprise me of the next steps I need to take." IAW the DoD Personnel Manual, DoD 1400.25-M, Administrative Grievance System, within 90 days from receipt, the deciding official shall "fully and

fairly consider the grievance and issue a written decision with supporting rationale for the decision." The plaintiff received no response.

The defendant maintained a pattern of deceit and continued to withhold information from the plaintiff. On or about December 13, 2005, the plaintiff, via FOIA, requested all communications concerning the FFSC cases from COMNAVMAR and CNI. The plaintiff received incomplete documents from COMNAVMAR and no documents from CNI. The plaintiff also requested the findings of LT Chiappetta's command-directed investigation, where the plaintiff provided considerable information to show the defendant's gross negligence and impropriates. It should be noted that Chiappetta, COMNAVMAR attorney, requested and received a lengthy interview with the plaintiff concerning the entire incident involving the Matthews. However, the response from CNI stated, "This investigation was prepared by or on behalf of the Government attorneys in anticipation of litigation, and is, therefore, attorney work product." In a letter to the defendant in May 2007, the plaintiff requested the Matthews' names be removed from the federal registry as child abusers and requested additional information via FOIA. The defendant disregarded the plaintiff's requests and provided no response. On June 12, 2007, the plaintiff asked, via FOIA, for copies of the Navy's adjudication of his official grievance, dated December 1, 2005. The defendant replied, "A diligent search of records contained within our Human Resources Office has revealed no record of a formal grievance adjudicated by COMNAVMARIANAS or any other agency, regarding your participation in the Navy's Family Advocacy Program."

As a result of the tribunal, the plaintiff's good name and reputation had been tarnished within the Navy community, including CNI, and he had no reasonable expectation to receive employment within the priority placement program (PPP) into a GS14 position. At such a high grade within the Department of the Navy, any job offer would mandate an interview with his current chain of command, where his child abuse status would be revealed, and a search of the Navy registry would reveal him as a child abuser as well. The plaintiff served over a year as the acting COMNAVMAR quality of life director and supervised FFSC. With his child abuse status, there is no chance he would have received a QOL director position at other installations.

As a result of the tribunal, the plaintiff was concerned that his security clearance would be revoked and he would be terminated from federal employment, as most high-level manager positions require a security clearance. He asked for and received early retirement, which caused significant professional and monetary loss.

Demand

a. The defendant pay the plaintiff $1,951,894 in compensatory damages.

b. The defendant remove the plaintiff's and Debora's names from the federal registry as child abusers.

c. The defendant provide all information requested via FOIA to the plaintiff.

18

d. The defendant provide answers to all questions asked by the plaintiff in his original claim.

Dated: November 9, 2007

*[signature]*, Pro Se
David G. Matthews
PO Box 25177, GMF, Guam 96921
671-789-0818