David G. Matthews
PO Box 25177
GMF, Guam 96921
671-789-0818

**FILED**
DISTRICT COURT OF GUAM

JAN - 3 2008

**JEANNE G. QUINATA**
Clerk of Court



## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

David G. Matthews,                 CV-07-00030

    Plaintiff,

vs.

United States

    Defendant.

## QUESTIONS FOR COURT AND OPPOSITION TO DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT

**QUESTIONS FOR COURT:**

1. The manual by the United States District Court of Guam, entitled "Filing A Civil Case On Your Own Behalf," November 25, 2002 (Revised November 6, 2006), page 4 of 6, paragraph (i), states service upon the United States, its agencies, corporations, officers or employees shall be effected by delivering a copy of the summons and complaint to the US attorney for the district which the action is brought, by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States and by sending a copy of the summons and complaint by registered or certified mail to the agency. The plaintiff has fulfilled these requirements. Is the plaintiff

1



required to submit future correspondence to all three entities or will it suffice to send correspondence to only the US Attorney in Guam?

2. In the defendant's motion for a more definite statement, the defendant claims proper service under "Fed. R.Civ.P., Rule 4(I) has not occurred." This is false. The court has copies of OA 440 (Rev. 8/01) Summons in a Civil Action, which was served upon Leonardo M. Rapadas, USA, the United States Attorney's Office for the District of Columbia and the Department of the Navy. All forms were filed in the district court of Guam on November 13, 2007. Is the court satisfied that proper service has occurred?

## OPPOSITION TO DEFENDANT'S MOTION FOR MORE DEFINITE STATEMENT:

On December 28, 2007, the plaintiff received, via certified mail, the defendant's motion for a more definite statement. The plaintiff opposes the defendant's motion and requests the court compel the defendant to answer the complaint.

In the defendant's motion, the defendant states, "The United States makes this Motion pursuant to the Federal Rules of Civil Procedure (Fed. R. Civ.P.), Rule 12 (e)." A party may move for a more definite statement if a pleading is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must point out the defects complained of and details required. The plaintiff filed his complaint with the court on November 9, 2007 and the defendant was served with the complaint and summons on November 13, 2007. The defendant's motion was filed December 26, 2007. As presented below, it is patently obvious the defendant has spent little time or effort in comprehending or answering the complaint, or coordinating the motion amongst their

various agencies. In the motion, the defendant presents erroneous information, fails to ask specific details as required in Rule 12 (e), or asks for details in possession of the defendant. For example, instead of asking the plaintiff, the US Attorney should ask Mr. Fisher, LCDR Grunawalt, Ms. Baza or Mr. Pereda for details concerning "the particular registry." Navy personnel are well versed on all aspects of the complaint, as it has been discussed ad nauseam. Below the plaintiff will address each issue presented in the defendant's motion and demonstrate the complaint is straightforward, clear and concise.

In the defendant's motion, the defendant argues the complaint is without numbered paragraphs. This is petty. The plaintiff has reviewed the Local Rules of Practice, GR5.1, Format and Filing, in the manual, Filing a Civil Case on Your Own Behalf. It does not mandate numbered paragraphs. The plaintiff did, however, attempt to format his complaint in accordance with the paragraph numbering sequence in the manual. The following is a direct quote from the Western District of Pennsylvania's Pro Se handbook, which the plaintiff assumes also reflects the opinion of this court: "Do not worry that your COMPLAINT is not professionally written. It should be typed if possible. The Court will take into consideration that you are a PRO SE litigant and untrained in drafting legal documents."

In the defendant's motion, the defendant claims, "the allegations are vague and ambiguous such that the United States cannot reasonably be required to frame a response pleading." This is false. On December 10, 2007, approximately 3:00 PM, the plaintiff contacted Mr. Schwab, the defendant's lead attorney, in reference to ensuring the scheduling order is processed in a timely manner. During the conversation, Mr. Schwab stated he was uncertain as to whether the plaintiff was suing for a constitutional tort. The


3

plaintiff reiterated the complaint was filed under the Federal Tort Claims Act (FTCA) and a plaintiff cannot sue the government under the FTCA for a constitutional tort. A constitutional tort would have to be filed under Bivens. The plaintiff stated the complaint was for emotional distress and invasion of privacy, which are applicable under the FTCA. Mr. Schwab acknowledged he understood.

The defendant's motion states, "The Complaint mentions the Federal Tort Claims Act (FTCA) as to statute of limitations, but does not specify further how the allegations fit within the statute." First, the aforementioned wording, "statute of limitations," is taken out of context. The plaintiff merely included this verbiage in the Jurisdiction section of the complaint to satisfy to the court that the plaintiff fulfilled his requirement to submit a claim to the agency (US Navy) within the statute of limitations, prior to filing a lawsuit.

Secondly, the defendant, represented by US attorneys, should easily deduce this FTCA lawsuit is based upon injury or loss of property caused by the negligent or wrongful acts or omissions of employees of the federal government while acting within the scope of their offices and employment, 28 USC 1346(b). The USC was also annotated on the cover sheet of the plaintiff's complaint.

Thirdly, under Rule 8. General Rules of Pleading, (a) Claims for Relief, a plaintiff is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the plaintiff went into great detail to present the substantive elements with sufficient facts to support his claim; the plaintiff apprised the defendant of the duties of federal employees that were breached, and the plaintiff made sufficient allegations of foreseeability and proximate cause to substantiate the severe emotional distress, humiliation, mental anguish and invasion of privacy that resulted in his untimely

retirement from federal service. The plaintiff properly placed the defendant on notice as to the nature and basis of his complaint. To comment that the plaintiff's claim is vague and ambiguous is simply untrue.

In the defendant's motion, the defendant states, "Upon information and belief, the claim arises from an incident in which the Plaintiff and his wife were investigated for possible abuse of their daughter." This is a false statement. This seems to imply there was a criminal investigation into the plaintiff's possible abuse of his daughter. The plaintiff was never advised of his legal rights, apprehended or charged for any wrongdoing concerning his daughter, and he was informed by his command there was no criminal investigation. The plaintiff was placed in a military tribunal for spanking his daughter while on vacation in Saipan. Does the defendant now claim the Navy conducted a criminal investigation concerning allegations of child abuse while in Saipan? If so, this is a possible violation of Posse Comitatus.

The defendant's motion states, "Authorities were called to their home on the military base during an apparent confrontation between the parents and their 12-year-old daughter." This is a false statement. Authorities were never called to the plaintiff's home. The plaintiff does not know where the defendant obtained this erroneous information, as it was not included in the complaint.

The defendant's motion states, "The Complaint seems to indicate that the ensuing interactions with COMNAVMAR security, Family Advocacy Program (FAP), Fleet and Family Support Center (FFSC), Guam Child Protective Services (CPS) and military attorneys, resulted in injuries to Plaintiff." First, the plaintiff does not understand the

"ambiguity" the defendant wants clarified in this statement. Secondly, nowhere in the complaint did the plaintiff address his personal interaction with COMNAVMAR security.

The defendant's motion states, "Plaintiff's Complaint describes interactions with the authorities that aggrieve him because the authorities were unprofessional and did not follow guidelines." This statement in itself is vague and it's impossible for the plaintiff to provide an intelligent response.

The defendant's motion states, "Plaintiff, at page 5, appears to accuse an official of falsifying a document and concealing the "crime"." On pages 4 and 5 of the complaint, the plaintiff alleges Pereda did not apprise the plaintiff or his spouse of the Privacy Act Statement prior to interviewing them. This was a nondiscretionary, statutory duty. Upon terminating their interview on June 17, 2005, Pereda had the plaintiff's spouse sign the Privacy Act Statement and Navy Family Advocacy Program Description documents, which he had in his possession, without explaining the documents or requiring her to read the documents. Pereda stated the documents, which the plaintiff and spouse determined approximately two months later to be the Privacy Act Statement and Navy Family Advocacy Program Description, were forms to merely allow FFSC and CPS to interview their daughter. In telephone conversations, Pereda admitted to the plaintiff's spouse that he did not apprise her of the Privacy Act Statement, yet he signed and backdated the Privacy Act Statement (an official document) and "witnessed as a provider." The plaintiff complained of the incident, as he believed there was probable cause a crime had been committed. To his knowledge, there was never a criminal investigation. However, the Navy did admit to Privacy Act violations. The defendant should not claim ignorance of the facts, and answer the complaint.

The defendant's motion states, "At page 6 Plaintiff, a civilian employee of the military, alleges being placed before a "military tribunal". The United States is unaware of the described tribunal and would need more details to identify the proceeding Plaintiff is referencing." This is a ridiculous statement. The defendant, of which the US Attorney's office is the lead agency, also includes the Department of the Navy and its subordinate command, COMNAVMAR. In the aforementioned statement, the defendant states they are unaware of the described tribunal and would need more details. Perhaps the defendant (US Attorney) should use due diligence and consult with the defendant (COMNAVMAR) to understand the military tribunal in question. It should be noted the plaintiff and LCDR Grunawalt, whose name is throughout the complaint, had numerous discussions, many documented, concerning this "military tribunal."

The defendant's motion states, "Plaintiff claims, at page 8, to have been subjected to "mandatory, involuntary FAP CRC". The United States would need details about the allegation." This is an absurd statement. On page 6 of the complaint, the plaintiff stated Mr. Paul Fisher, the senior COMNAVMAR legal counsel, argued the Navy had no FAP jurisdiction over federal civilian employees. On page 11 of the complaint, the plaintiff quoted an email exchange between Grunawalt and LT Weinthal, an attorney at Commander, Naval Installations (CNI), which was obtained via FOIA on or about January 2006. In the email, Grunawalt made the following comment, "Does it matter that the CRC has already occurred (the case was substantiated on Tuesday your time) and FAP has already enter the Matthews' information into the Navy Central Registry? Can we really un-ring the bell?" On page 14 of the complaint, the plaintiff quoted Grunawalt who stated, "Under OPNAVIST 1752.2A neither you nor your attorney are entitled to be

present at the CRC meeting..." The plaintiff should give no more details about the defendant's program - the FAP CRC. The defendant should answer the plaintiff's complaint.

The defendant's motion states, "As a civilian hire, allowed to live on base, Plaintiff may have been subject to proceedings regarding his privilege to live on the base, but it is not clear from the Complaint." The plaintiff does not understand the ambiguity or vagueness the defendant wants clarified in this statement. In the complaint, on pages 10 and 11, the plaintiff referenced an email exchange with Grunawalt concerning conditions of employment. Prior to accepting the position at COMNAVMAR, the plaintiff was never apprised that he would be treated differently than local-hire counterparts and subject to special rules/regulations that could have a negative impact on his career as a federal employee, to include special "proceedings regarding his privilege to live on base." If there were special "proceedings," in the answer to the complaint, the defendant should articulate those proceedings and show proof the plaintiff was briefed and acknowledged that he could suffer a military FAP CRC tribunal. If there were special proceedings and the plaintiff did not receive prior notification, perhaps the government again breached its duties. It's illogical for the plaintiff to explain the defendant's logic in regards to any special proceedings when the plaintiff was unaware of any special proceedings.

The defendant's motion states, "At page 9, Plaintiff references being placed on a "federal registry as child abusers" but does not include a copy of the registry nor enough information to allow the United States to locate the particular registry. It is not clear if the "registry" alleged is a military housing list or a criminal listing in the United States." Instead of burdening the plaintiff or the court, perhaps the US Attorney should contact

the Navy, e.g., COMNAVMAR, to clear up any "ambiguity" concerning the defendant's registry. On page 16 of the complaint, the plaintiff stated, "The central registry is used to screen applicants for various jobs within the federal government." Also, on page 11 of the complaint, the plaintiff included a quote from Grunawalt concerning the "Navy Central Registry." It is obvious the defendant (US Attorney's office) did not analyze the complaint or coordinate their motion for more definite statement with the Department of the Navy or COMNAVMAR.

The defendant's motion states, "The Complaint mentions grievances against the actions of named individuals without giving enough information for the United States to determine what injury under the FTCA would apply." Throughout the complaint, the plaintiff presented negligent acts and omissions by government employees that were non-discretionary in nature, e.g., duty to apprise of the Privacy Act, duty to apprise on the Navy Family Advocacy Program Description, duty to answer a grievance within a specified time, duty to provide FOIA information. Those acts, coupled with the defendant's total disregard for the plaintiff's procedural due process rights; failure to show a nexus between employment and parental privacy rights to raise and discipline children, which never arose to abuse; discrimination between local and stateside-hire employees and among stateside-hire employees (i.e., Anderson Air Force supported civilian personnel v. Navy supported civilian personnel); created severe emotional distress and invaded the plaintiff's privacy. The stress of being labeled a child abuser and placed in a federal registry was so severe the plaintiff was compelled to retire. The plaintiff's job description required a "secret" clearance. Throughout the ordeal, the plaintiff lamented that the government's actions could end his career at any time, for

cause, because he had to maintain a security clearance. He was also aware of the stigma within the Navy of being accused of child abuse and the fact his local and higher chains of command knew him as an abuser. Mr. Fisher, the senior COMNAVMAR attorney, agreed with the plaintiff that the Navy's actions constituted disciplinary action and could negatively impact his employment. After the military tribunal and being substantiated as a child abuser, it was of sufficient concern to his immediate supervisor, CAPT (S) Enriquez, that he instructed the plaintiff to report his placement in the registry to the COMNAVMAR security officer.

The plaintiff was a stellar employee throughout his federal civil service career, beginning with his employment as a GS-4 to his terminal grade of GS-14. He never received any disciplinary action. The plaintiff decided to cut his losses and receive a small retirement with continued medical coverage for his family than risk being terminated for cause from federal employment for failure to maintain his security clearance. He asked for and received an early retirement at a time when there was no Navy-wide early retirement program. When he was processing his retirement paperwork, the plaintiff did not ask for, but was informed by the COMNAVMAR HRO, that he was also eligible for the $25K retirement incentive.

At the time of his retirement, the plaintiff's base salary was $93,351 per annum; he also received a 25% COLA and 5% agency matching TSP contribution. He now receives a monthly retirement of $1,452 and his federal medical insurance. However, he will not receive a cost of living increase until he reaches his normal retirement age of 56, about 10 years from now. At the time of his retirement, the plaintiff forfeited over 2000 hours of

sick leave, which he was unable to cash in because he was under the Federal Employees Retirement System (FERS).

The plaintiff suffered and continues to suffer mental distress and mental anguish. He lost his property interest and suffered humiliation. The plaintiff suffered severe emotional distress of substantial quantity and enduring quality that no reasonable person in a civilized society should be expected to endure. The defendant's conduct was so extreme and outrageous "as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[1] The defendant's conduct would cause an average member of the community to immediately react in outrage.

The defendant's motion states, "On page 14 of the Complaint, the Plaintiff lists number paragraphs of grievances without a clear statement about the relationship to the FTCA or to specific injuries or damages." In the complaint, from page 12 through 15, the plaintiff outlined procedural due process protections that should have been afforded the plaintiff to ensure the governmental action, the military tribunal, was fundamentally fair. The plaintiff stated with specificity where the government violated the plaintiffs due process rights. These violations and the subsequent placement in the federal registry as a child abuser affected the plaintiff's property and liberty interests, which resulted in extreme emotional distress and compelled the plaintiff to seek early retirement.

The defendant's motion states, "Page 16 references HIPAA violations and a failure to consider "Douglas Factors". The relationship to the FTCA and injuries is not clear." The

---

[1] Rest. 2d Torts, § 46, com. d; see Prosser, Law of Torts, supra, at pp. 46-47.

government violated HIPAA by presenting the plaintiff's daughter's protected medical information at the tribunal without the plaintiff's permission. This was an outrageous, unlawful act. It created emotional distress and was an invasion of privacy. The plaintiff demands the defendant present its legal right to access and present his daughter's protected medical information, without the plaintiff's permission, at an agency tribunal. The defendant should also explain why the plaintiff's local-hire counterparts' family members are not subject to this invasion of privacy; why his stateside-hire counterparts' family members at Anderson Air Force base are not subject to this invasion of privacy; and why federal employees' family members in the continental United States are not subject to this invasion of privacy. The defendant should also explain why the plaintiff was not allowed to attend the tribunal while his daughter's medical information was being discussed. There was no criminal or inappropriate activity on the part of the plaintiff whereby a nexus to the plaintiff's federal employment should have resulted in the defendant's conduct, to include accessing and presenting his daughter's medical information at the tribunal. The plaintiff has reviewed an Internal Revenue Service (IRS) document concerning the legality of disciplining agency personnel for off-duty conduct – proving a nexus to employment: An off-duty IRS agent gets into a fight. Nexus to job? No. An IRS agent fails to pay taxes. Nexus to job? Yes. The defendant should prove a nexus to the plaintiff's employment and prove the defendant's right to present the plaintiff's daughter' medical information at the tribunal.

The plaintiff and Mr. Fisher opined placement in a federal registry constitutes adverse or disciplinary action. As stated in the complaint, in Miller v. Debuono (90 NY2d 783 (1997)), the New York Court of Appeals ruled that placement of the nurse's name in a

registry that was maintained for identifying abusers (similar to the Navy's central registry), calls into question her reputation and had an effect of limiting employment. In its landmark decision, Curtis Douglas v. Veterans Administration, 5 MSPR 280, the Merit Systems Protection Board established criteria that supervisors must consider in determining an appropriate penalty to impose for an act of employee misconduct. In determining an appropriate penalty, the agency must show an adequate relationship or nexus between the misconduct and the efficiency of the service. To determine what penalty would be appropriate, the agency must consider all relevant Douglas Factors, both mitigating and aggravating. The defendant failed to consider the Douglas Factors, for example, numbers 6 and 9, respectively: consistency of the penalty with those imposed upon other employees for the same or similar offenses; the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question.

The defendant's motion states, "The final page of the present Complaint references career damage and states that Plaintiff asked for and received early retirement, "which causes significant professional and monetary loss." The Freedom on (sic) Information Act is also referenced. The United States is unable to respond within the context of the FTCA, to these vague references." The plaintiff has articulated the career damages, early retirement, professional and monetary loss. Upon request, the defendant had a duty to provide FOIA information. The fact that the plaintiff requested FOIA information concerning his liberty and property interests should not seem "vague" to the defendant, and the defendant should understand the correlation between official misconduct, i.e., failure to provide FOIA information, and emotional distress and invasion of privacy.

The plaintiff opposes the defendant's motion for a more definite statement. The plaintiff asks the court to sanction the defendant for filing a frivolous motion and to direct the defendant to answer the complaint.

So submitted this 3rd day of January 2008.

*[signature]* Pro Se
David G. Matthews
PO Box 25177,
GMF, Guam 96921
671-789-0818