LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, GU 96910
Tel: (671) 472-7332
Fax: (671) 472-7215/7334

Attorneys for the United States

FILED
DISTRICT COURT OF GUAM

FEB 0 7 2008

JEANNE G. QUINATA
Clerk of Court

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| DAVID G. MATTHEWS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Case No.: 07-00030<br><br>**DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE** |

COMES NOW, the Defendant, UNITED STATES OF AMERICA, by and through the United States Attorney's Office for the District of Guam, and pursuant to Rules 12(b)(6) and (f), Federal Rules of Civil Procedure, respectfully submits its Motion to Dismiss or, in the Alternative, Motion to Strike, to-wit:

## MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." The District Court of Guam has held that "a complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." *Cruz v. Calvo*, 2006 U.S. Dist. LEXIS 94516, at *1-*2 (D. Guam Dec. 28, 2006) (citing to *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). "The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from

1

them." *Cruz*, 2006 U.S. Dist LEXIS 94516, at *2 (citing to *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998)). Furthermore, "the complaint must be read in the light most favorable to the plaintiff." *Id.* "Dismissal is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." *Id.* (internal quotation omitted). "Although great specificity is not ordinarily required, the plaintiff must nevertheless set forth factual allegations, either direct or inferential, respecting **each material element** necessary to sustain recovery under some actionable legal theory." *Id.* (citing to *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001)) (emphasis added); *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' for his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1248 (9th Cir. 2007) (internal quotation omitted). Here, Plaintiff fails to state factual allegations with sufficient specificity to support all elements of his claims.

### A. PLAINTIFF FAILS TO ESTABLISH FACTS TO SUPPORT A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff's first claim is for Intentional Infliction of Emotional Distress ("Emotional Distress"). To state an Emotional Distress claim, Plaintiff must show: "(1) outrageous conduct by the defendant; (2) an intention of causing or reckless disregard of the probability of causing emotional distress; (2) that the plaintiff has suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 736 (C.D. Cal. 1986).

Plaintiff has failed to allege that Defendant's conduct was outrageous or set forth facts that support an allegation of outrageous conduct. Conduct is "outrageous" only if it "exceed[s] all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress." *Miller*, 797 F.2d at 736 (internal quotation omitted).

Further, "behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Id.* Here, Plaintiff merely concludes that Defendant "intentionally inflicted emotion distress" upon him but completely ignores the elements of the claim and fails to state <u>any</u> facts whatsoever that characterizes Defendant's actions as "outrageous." (See Complaint at page 2).

To the contrary, Plaintiff's acts were not outrageous and were, in fact, reasonable under the circumstances. On or about June 16, 2005, Vince Pereda ("Pereda"), a Family Advocacy Program ("FAP") case worker for the Fleet and Family Support Center ("FFSC"), contacted Plaintiff and his wife, Debora Matthews, to schedule an interview with Debora Matthews to discuss an alleged child abuse incident that occurred on June 14, 2005. Although Debora Matthews was the target of the interview, Plaintiff insisted on attending the meeting to provide moral support to his wife. Pereda allowed him to do so. Pursuant to a Joint Memorandum of Understanding dated April 18, 2001 ("Joint MOU", attached hereto as Exhibit "A")[1], Josita Camacho ("Camacho"), a Guam Child Protective Services ("CPS") case worker, attended the meeting in an effort to conduct a joint assessment of the alleged child abuse incident. At no time did Pereda attempt to conceal Camacho's identity. In fact, Pereda introduced Camacho to Debora Matthews and Plaintiff. Debora Matthews, the only target of the interview, received a Privacy Act Waiver and signed the waiver at the conclusion of the interview. However, during the interview of Debora Matthews, Plaintiff volunteered information about actions he had taken toward his daughter which inclined Camacho to identify Plaintiff as a possible offender as well. Pereda's actions were not outrageous for several reasons. First, he conducted the joint assessment with CPS pursuant to a directive, the Joint MOU. Second, Pereda took precautionary measures to disclose CPS's participation in the interview by identifying

---

[1] The Joint Memorandum of Understanding is between Commander U.S. Naval Forces Marianas, Commander, 36th Air Base Wing, Andersen Air Force Base, Department of Defense Education Activity (DODEA), Guam and the Territory of Guam, Child Protective Services (CPS) a Unit of the Department of Public Health and Social Services of Guam.

3

Camacho and her position during the interview. Third, Pereda and Camacho took actions in response to information that Plaintiff volunteered on his own accord. Fourth, Pereda's actions were not calculated to cause mental distress; to the contrary, Pereda's actions were calculated to further public policy, specifically child protection and child abuse prevention.

Assuming, *arguendo*, Plaintiff has sufficiently pled facts that support the first element of an Emotional Distress claim, Plaintiff has failed to allege, or even suggest, any facts to indicate that he has suffered severe or extreme emotional distress. Plaintiff's conclusory allegation that Defendant intentionally inflicted "emotion distress" upon Plaintiff, without more, is insufficient (See Complaint at page 2). "Severe distress" has been defined as "substantial, or enduring. . . of such substantial quantity or quality that no reasonable man in a civilized society should be expected to endure it." *Miller*, 797 F.2d at 737. Further, "such reactions as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry satisfy this test." *Id*. Plaintiff's Complaint is totally devoid of any facts that indicate that Plaintiff suffered severe or extreme emotional distress as a result of Defendant's alleged outrageous conduct. The total lack of facts to support each material element of an Emotional Distress claim requires dismissal of the claim.

B. PLAINTIFF FAILS TO STATE FACTS SUFFICIENT TO SUPPORT A VIOLATION OF PRIVACY CLAIM.

Plaintiff's second claim is for Invasion of Privacy based on an alleged violation of the Privacy Act of 1974, 5 U.S.C. Section 522a(b) ("Privacy Act")[2]. The Privacy Act provides that "no agency shall disclose any record which is contained in a <u>system of records</u> by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains. . . " 5 U.S.C. § 522a(b) (emphasis added). To establish a claim for wrongful disclosure under the Privacy Act, Plaintiff must establish that (1) the information disclosed by Plaintiff during the June 17, 2005

---

[2] Although Plaintiff's Complaint does not specifically identify the Privacy Act of 1974 as the basis of his privacy claim, the allegations and facts set forth in his Complaint suggest that Plaintiff relies on the Privacy Act and alleges wrongful disclosure under the Privacy Act. Plaintiff's Complaint does not suggest a privacy claim based on common law invasion of privacy.

4

meeting with Debora Matthews, Pereda and Camacho is a record contained in a system of records; (2) Defendant disclosed the information improperly; (3) the disclosure had an adverse affect on Plaintiff; and (4) the disclosure was willful or intentional. *Stafford v. Social Security Administration*, 437 F. Supp. 2d 1113, 117 (N.D. Cal. 2006). Plaintiff has failed to set forth facts sufficient to establish a wrongful disclosure under the Privacy Act.

First, Plaintiff fails to establish that Defendant maintains a system of records, which is an essential element of a Privacy Act claim. *See generally* 5 U.S.C. § 522a(a)(5) ("The term 'system of records' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual"); *see also* 5 U.S.C. § 522a(a)(4) ("The term 'record' means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particulars assigned to the individual, such as a finger or voice print or a photograph."). In fact, Plaintiff's complaint is lacking in any mention, direct or inferential, of a system of records.

Second, Plaintiff has failed to allege an improper and unauthorized disclosure by the Defendant. On June 17, 2005, Pereda conducted a joint assessment evaluation with Camacho, whereby Pereda interviewed Debora Matthews regarding an alleged child abuse incident that occurred on June 14, 2005. Although Debora Matthews was on the only target of the interview, Plaintiff insisted on attending the meeting to provide moral support to Debora Matthews. Pereda permitted Plaintiff to attend the interview. Plaintiff was aware of Camacho's presence during the entire meeting and Camacho's role as a case worker for CPS. Thus, any information that Plaintiff volunteered in Camacho's presence was a <u>disclosure by Plaintiff</u>, not Defendant. It defies common sense for Plaintiff to interject himself into a child abuse interview in which he was not invited, acknowledge and accept a CPS case worker's presence during the interview, but claim "foul play" only after hindsight leads him to realize that he volunteered damaging information to the case worker. It is unnecessary to analyze the

5

remaining elements of a privacy claim based on a wrongful disclosure because the Plaintiff has failed to meet his burden of establishing the first two essential elements. Accordingly, Plaintiff's Invasion of Privacy claim must be dismissed.

## MOTION TO STRIKE

Defendant moves to strike portions of Plaintiff's Complaint which are unrelated to Plaintiff's Emotional Distress or Privacy Act claims. Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike any pleading that is "redundant, immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). "Redundant" matter consists of "allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). "Immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id.* The court in *Wilkerson* noted that "a statement of unnecessary particulars in connection with and descriptive of a material matter may be stricken as 'immaterial.'" *Wilkerson*, 229 F.R.D. at 170. Also, superfluous historical allegations are also immaterial matters.

Further, "impertinent" matter consists of "statements that do not pertain and are unnecessary to the issues in question." *Wilkerson*, 229 F.R.D. at 170; *see also In re 2TheMart.com, Inc. Securities Litig.*, 114 F. Supp. 2d 955, 965 (C.D.Cal. 2000) (defining impertinent matter to include allegations "which are inadmissible as evidence."). "An 'impertinent' allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties." *Wilkerson*, 229 F.R.D. at 170. "Scandalous" matter includes "allegations that cast a derogatory light on someone, usually a party." *Id.*; *see also In re 2TheMart.com, Inc. Securities Litig.*, 114 F. Supp. 2d at 965 (internal quotation omitted). "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Id.* Rule 12(f) motions are generally disfavored, and will be granted only if it is clear that the matter will have no bearing on the controversy before the Court. *Survivor Prods., LLC v. Fox Broad. Co.*, 2001 U.S. Dist. LEXIS 25512, at *8 (C.D. Cal. June 11, 2001) (internal quotation

6

omitted). However, "the court possesses considerable discretion in disposing of a motion to strike redundant, impertinent, immaterial, or scandalous matter." *Survivor Prods., LLC*, 2001 U.S. Dist. LEXIS at *8 (internal citations omitted) (emphasis in original).

Several allegations contained in Plaintiff's Complaint are unrelated to Plaintiff's Emotional Distress or Privacy Act claims. Other allegations are simply superfluous and not essential to Plaintiff's claims. Further, a few allegations are scandalous statements which are not related to Plaintiff's claims but are made solely to place Defendant in a derogatory light.

Defendant therefore requests the following portions of Plaintiff's Complaint be stricken pursuant to Rule 12(f):[3]

   I.   Beginning on page 2, fourth paragraph, sentence beginning with "a review of FFSC case records reveals" to the "a copy sent to him/her" on page 3. This portion should be stricken as immaterial because it merely states legal conclusions and questions of law.

   II.  Beginning on page 3 and continuing to page 4, first sentence of third full paragraph and the phrase "'another agency' as defined in the Act." This portion should be stricken as immaterial because it merely states legal conclusions and questions of law.

   III. The last sentence of the first full paragraph on page 5, beginning with "the plaintiff requested a criminal investigation." This sentence should be stricken as scandalous because it is not related to Plaintiff's Emotional Distress or Privacy Act claims and accuses Defendant of committing and concealing a crime.

   IV.  Any reference to a military tribunal. A military tribunal is a kind of military court designed to try members of enemy forces during wartime, operating outside the scope of conventional criminal and civil matters. *Wikipedia available at http://en.wikipedia.org/wiki/Military_tribunal*. Plaintiff was subjected to a hearing before the Fleet and Family Support Center ("FFSC"),

---

[3] Plaintiff's Complaint is without numbered paragraphs. Defendant's Motion to Strike refers to paragraphs in the order that they appear within the Complaint.

7

Family Advocacy Program's ("FAP") Case Review Committee ("CRC"). The purpose of the CRC is to substantiate spousal and child abuse cases and follow up on case planning in connection with providing prevention, evaluation, intervention, treatment and rehabilitation services. Any reference to a military tribunal should be stricken as scandalous and impertinent because it insinuates that Plaintiff was tried as a war criminal.

V. Second full paragraph on page 6, beginning with "employees shall be protected against." This paragraph should be stricken as impertinent because it does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

VI. Both paragraphs on page 7. These paragraphs should be stricken as impertinent because they do not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

VII. First full paragraph on page 7, beginning with "in an e-mail to Lloyd." This paragraph should be stricken as impertinent because it does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

VIII. Beginning on page 8, the paragraph that begins with "in his response to the same question" to "truly arbitrary and unlawful" on page 9. This paragraph should be stricken as impertinent because it does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

IX. The first two full paragraphs on page 9, beginning with "Grunawalt stated if the plaintiff" to the sentence ending with "a military tribunal and a federal registry as child abusers." These paragraphs should be stricken as impertinent because they do not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

X. Beginning on page 9, second full paragraph beginning with "5 USC 2302 prohibits employers" to "occur during duty hours" on page 10. Also, the phrase "employment rights" on page 10. This paragraph should be stricken as impertinent because it does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

8

XI. Beginning on page 10, the second full paragraph beginning with "In an email to Grunawalt" to "as a condition of employment" on page 10. This paragraph should be stricken as impertinent because it does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

XII. The first full paragraph on page 11, beginning with "the plaintiff and Debora were concerned" to "not allowed Navy legal support." This paragraph should be stricken as impertinent because it does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

XIII. The second full paragraph on page 12, beginning with "The US Constitution guarantees" to "is fundamentally fair." This paragraph should be stricken as impertinent because it contains legal arguments and does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

XIV. The first two sentences of third full paragraph on page 12, beginning with "the plaintiff had both a property" to "- his property interest." These sentences should be stricken as impertinent because they contain legal arguments and do not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

XV. A portion of the first full paragraph on page 13, beginning with "after the tribunal" to "has suffered a deprivation of liberty." This portion should be stricken as impertinent because it contains legal arguments and does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

XVI. Beginning on page 13, the second full paragraph beginning with "the plaintiff's case is analogous to" to the end of the second paragraph on page 16. Said paragraphs should be stricken as impertinent because they contain legal arguments and does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

XVII. A portion of the first full paragraph on page 17, beginning with "The defendant maintained a pattern" to the sentence ending with "anticipation of litigation, and is, therefore, attorney work product." This portion should be stricken as

9

Case 1:07-cv-00030   Document 15   Filed 02/07/2008   Page 9 of 18

impertinent because it does not pertain to Plaintiff's Emotional Distress or Privacy Act claims.

## SUMMARY

Plaintiff's Complaint alleges he was emotionally damaged and his privacy was invaded, apparently in the aftermath of allegations of abuse from his 12-year-old daughter that occurred while he was living on base at U.S. Naval Base Guam. The Complaint does not state a claim upon which relief can be granted and, instead, contains information and claims that are vague, legally irrelevant, incorrect and incapable of eliciting a response. The United States cannot properly answer the Complaint as submitted. The Court is therefore urged to dismiss the Complaint or, in the alternative, to strike the offending language in the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests that the Court enter an order in favor of Defendant, and that Defendant is granted such other and further relief as the Court may deem just and proper, including recovery of all costs of suit and appropriate fees.

Dated this 7th day of February, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

MIKEL M. SCHWAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney

JOINT MEMORANDUM OF UNDERSTANDING
BETWEEN
COMMANDER U.S. NAVAL FORCES MARIANAS
COMMANDER, 36TH AIR BASE WING, ANDERSEN AIR FORCE BASE,
DEPARTMENT OF DEFENSE EDUCATION ACTIVITY (DODEA), GUAM
AND THE TERRITORY OF GUAM,
CHILD PROTECTIVE SERVICES (CPS)
A UNIT OF THE DEPARTMENT OF PUBLIC HEALTH
AND SOCIAL SERVICES
GOVERNMENT OF GUAM

Subject: AGREEMENT ON PROCEDURES FOR THE INVESTIGATION OF CHILD MALTREATMENT AND CONDUCT OF OFFICIAL BUSINESS ON ALL MILITARY INSTALLMENTS IN GUAM.

1. Purpose. To establish written procedural guidelines and delineate areas of responsibility between Commander, U.S. Naval Forces Marianas (COMNAVMARIANAS) Commander, 36th ABW, Andersen Air Force Base (AAFB), Department of Defense Education Activity (DoDEA), Guam, and the Guam Child Protective Services (CPS), a Unit of the Department of Public Health and Social Services, Government of Guam, with regard to matters involving the maltreatment of children of active duty military families and/or students of a DoDEA school within the Territory of Guam.

2. General. This agreement does not purport to create additional jurisdiction nor to limit or modify the existing jurisdiction vested in CPS or the U.S. military pertinent to child maltreatment.

3. Authority. Guam, through CPS, and under the authority "granted by the Child Protective Act, 19 Guam Code Annotated (GCA), Chapter 13, §§ 13100 through 13335," is responsible for the protection of children on Guam. COMNAVMARIANAS and the Commanding Officers of Naval Installations, Commander, 36th ABW, Andersen Air Force Base, and the District Superintendent of DoDEA, by virtue of their authority, are responsible for the protection of maltreated children of military families and non-eligible beneficiaries within their commands, as well as for maintaining good order and discipline within their respective military-controlled property. The authority to provide protection for these children is limited, however, by the lack of a federal judicial framework in which the status of eligible minor beneficiaries can be adjudicated and when appropriate, judicially managed remedies can be mandated. COMNAVMARIANAS, Commander, 36th ABW, Andersen Air Force Base, and the District Superintendent of DoDEA, therefore, rely on CPS to petition the Guam Family Court to exercise its authority where necessary, in cases of these maltreated minor beneficiaries.

4. Reference

    a. Air Force Directive 40-3, Family Advocacy Program
    b. Air Force Instruction 40-301
    c. COMNAVMARIANASINST 1752.3 through 1752.4

GOVERNMENT EXHIBIT A

d. Child Protective Act 19 Guam Code Annotated, Chapter 13, §§ 13100 through 13335.
e. Public Law 104-235, Child Abuse Prevention and Treatment Act
f. DoDEA Regulation 2050.9
g. AFOSI Instruction 71-107 (Processing Investigative Matters) and AFOSI Manual 71-122 (Criminal Investigations)

5. <u>Definitions</u>. For the purpose of this agreement, the following definitions apply:

   a. <u>Child</u>. An unmarried person, whether a natural (birth) child, adopted (legally finalized) child, foster child, stepchild, or ward of a military member or federal employee for whom treatment is authorized by Defense Eligibility Enrollment Reporting System (DEERS) in a medical facility of the military services under the age of eighteen (18) years and/or a person attending a DoDEA School.

   b. <u>Child Maltreatment</u>. A generic term which includes all forms of abuse or neglect, including child sexual abuse, physical and emotional abuse/neglect, of a child by a parent, legal guardian, step-parent or person responsible for that child's care under circumstances which indicate the child's health or welfare has been or is harmed or threatened with harm.

   c. <u>Credible Report</u>. Information, which appears to be reliable and factual, or an observation, which appears to be accurate, either of which supports a tentative conclusion that maltreatment occurred or that further investigation is warranted.

   d. <u>Family Advocacy Program (FAP)</u>. A program established by Department of Defense directives, which is designed to address all aspects of intervention concerned with maltreatment involving military personnel and their dependents. This intervention includes identification, evaluation, treatment and education, case management, and prevention.

   e. <u>Family Advocacy Representative (FAR)</u>. Navy Fleet & Family Support Center Credentialed Social Worker who is responsible for implementing and managing the intervention/rehabilitation aspects of the installation FAP.

   f. <u>Navy/Air Force Family Advocacy Committee (FAC)</u>. The policy-making, coordinating, recommending, and overseeing body for the Navy/Air Force FAP. Generally includes representatives from victim/witness services, family support programs, medical, law enforcement, legal, chaplains, youth and child services, shelters, installation and tenant commands.

   g. <u>Navy FAP Case Manager (FAPCM)/ Air Force Family Advocacy Officer (FAO)</u>. The individual in the respective branch of military service designated to coordinate treatment and reporting requirements in FAP cases. The FAPCM/FAO is responsible for response, follow up and interceding on behalf of victims and families. The FAPCM and FAO are qualified full-time social workers. The Navy FAPCM is attached to the COMNAVMARIANAS Navy Fleet & Family Support Center, Guam and the Air Force FAO is attached to the 36th Medical Group, Mental Health Flight located at Andersen Air Force Base, Guam.

   h. <u>Military-related Incident</u>. A military related incident is defined as:

1. An act of child maltreatment involving a child of a military family or DEERS eligible federal employee.

2. An act of child maltreatment occurring on a military installation.

3. An act of child maltreatment off a military installation where the alleged perpetrator is a military member.

i. **Off-installation Incident**. An act of child maltreatment involving a military beneficiary, which occurs beyond the boundaries of military-controlled property.

j. **On-installation Incident**. An act of child maltreatment occurring on military-controlled property, including DoDEA Schools.

k. **Report Point of Contact (RPOC)**. The RPOC of child maltreatment is normally the FAPCM for Navy/United States Coast Guard (USCG)/United States Army (USA) and the FAO for USAF cases. In the Air Force, the Law Enforcement desk will notify the RPOC of any child maltreatment incidents. In emergency situations (where the possibility of criminality exists) and when the FAPCM/FAO are not yet involved, the RPOC will be the Naval Criminal Investigative Service (NCIS) and/or Air Force Office of Special Investigations (AFOSI) in cases involving Navy or Air Force personnel respectively. Further investigative activity will be determined by NCIS or AFOSI. In all cases, the respective FAPCM/FAO will be the on-going military case manager for their respective military service as well as the RPOC subsequent to any emergent involvement by Base Security or the Provost Marshal's Office. The RPOC is responsible for notifying agencies as required by local statutes, military directives, and this Memorandum of Understanding (MOU).

l. **Installation Commanding Officer**. The Commanding Officer of a specific military base or facility.

m. **Military Family**. Active duty service member of the Navy, Marine Corps, United States Coast Guard, Army or Air Force, their dependent spouses and children.

6. **Responsible Agencies/Committees**. For the purposes of this agreement, the following agencies/committees perform responsibilities as described:

a. **Air Force Office of Special Investigations (AFOSI)**. The agency responsible for investigating felony crimes involving child maltreatment, both on and off Air Force -controlled property. OSI coordinates investigations and works jointly with federal and local law enforcement agencies. AFOSI has the authority to accept or decline any allegation within its investigative purview.

b. **Commander, 36 ABW, Andersen Air Force Base**. Representative for all Air Force commands and personnel, active duty and civilian within the US Territory of Guam.

3 of 8

c. <u>Commander U.S. Naval Forces Marianas (COMNAVMARIANAS)</u>. The regional coordinator for all Naval and Marine Corps commands located within the region of the Island of Guam. COMNAVMARIANAS in the role of regional coordinator represents all Navy and Marine Corps commands in the Territory of Guam for the purposes of this MOU.

d. <u>Child Protective Services (CPS)</u>. The unit primarily responsible for intake, investigation, and the provision of protective services to maltreated children within the Territory of Guam.

e. <u>District Superintendent for the DoDEA, Guam, Schools</u>. The person in charge of all DoDEA schools in the Territory of Guam.

f. <u>The Family Division of the Superior Court of Guam.</u> Hereafter referred to as the "Family Court," the Family Court is empowered to adjudicate child maltreatment cases occurring within the Territory of Guam.

g. <u>Navy Assistant Chief of Staff (ACOS) for Security and Fire</u>.
The person responsible for providing all law enforcement activities aboard Navy installations and who has investigative responsibility for misdemeanor crimes involving child maltreatment on Navy-controlled property.

h. <u>Naval Criminal Investigative Services (NCIS)</u>. The agency responsible for investigating felony crimes involving child maltreatment on Navy controlled property or involving Navy/Marine Corps personnel. NCIS coordinates investigations concerning Navy/Marine Corps personnel with federal and local law enforcement agencies.

i. <u>Navy Family Advocacy Case Review Committee (CRC)/ Air Force Family Maltreatment Case Management Team (FMCMT)</u>. This is the multidisciplinary team authorized to review referral and other relevant information and to make recommendations to the sponsor's unit for the disposition of cases of military dependent children and families where children have been, or are suspected of being maltreated.

j. <u>Navy Fleet & Family Support Center</u>. This department is primarily responsible for the intake assessment, treatment, and case management of child maltreatment cases involving U.S. Navy and Marine Corps personnel (services may be extended to USCG, USA and DEERS eligible federal employees) and their families in coordination with CPS.

k. <u>36th Medical Group, Family Advocacy Program Office</u>. This department is primarily responsible for the intake assessment, treatment, and case management of child and spouse maltreatment cases involving U.S. military personnel and eligible beneficiaries who are empanelled with the Medical Group for their healthcare and will coordinate services with CPS.

l. <u>Air Force Security Forces Investigations/Command Investigation Division (CID)</u>. This agency is responsible for investigating simple assaults including less serious child abuse and neglect occurring on U.S. Air Force installations or

4 of 8

property where there is existing exclusive or concurrent jurisdiction or occurring off-base if the accused is an active duty member of the Air Force

m. Air Force Child Sexual Maltreatment Response Team (CSMRT). An ad hoc committee that meets, at the call of the FAO, in response to an allegation of child maltreatment.

7. Report and Notification Requirements.

a. RPOC – If FAPCM/FAO receives initial referral and suspects, on the basis of information, professional experience and training, that a child has been abused or neglected, then contact is made with CPS and other appropriate agencies.

b. DoDEA – If DoDEA personnel have a reasonable suspicion of, or receive a initial report regarding possible child maltreatment, then they will immediately refer the case to the respective RPOC. DoDEA will also report the case to CPS as required by References 4.b., 4.e. and 4.f. above.

c. CPS – If CPS personnel receive any report of child maltreatment involving the child(ren) of military families, occurring on or off military installations, from sources other than the RPOC, they will provide the RPOC with information pertaining to the case as expeditiously as possible.

8. Investigation and Reporting Procedures.

a. Military-related incidents occurring within the boundaries of the installation will be investigated by military authorities to determine the extent of military, criminal, and administrative interests involved, and will be reported to CPS or other civilian authorities, as appropriate. Upon notification, FAPCM/FAO will assess incident per relevant instructions. FAPCM/FAO will ensure that CPS is updated regularly on case status.

b. Military-related incidents occurring outside the boundaries of the installation will be investigated by CPS with assistance from other civilian and military authorities, as appropriate. CPS will ensure that FAPCM/FAO are updated regularly on case status.

c. CPS will investigate all credible reports of child maltreatment cases referred by military/DoDEA personnel. Military investigative agencies, RPOCs and CPS will maintain constant communications and cooperation in investigations of child maltreatment. CPS will ensure that the FAPCM/FAO is updated regularly on case status.

d. Prior to entering the installation the CPS investigator will notify Base Security and the FAR/FAO with pertinent information on case and the investigator requiring base access. In cases involving entry into military-controlled property, the FAR/FAO will contact Base Security to arrange for appropriate escort. The FAR/FAO may also contact other departments (Housing, CNM Staff Judge Advocate, etc.) as appropriate. In addition, if the investigation is an NCIS-AFOSI controlled investigation, CPS will notify and coordinate the investigation directly with NCIS-AFOSI.

e. During the course of an investigation, military investigative agencies and CPS may decide to interview the child and/or have the child medically evaluated.

   1. In Navy cases, if transportation of the child is warranted, the FAPCM will coordinate transportation with CPS, appropriate law enforcement agencies and sponsor's command, considering all the facts and circumstances of the case.

   2. In Air Force cases, if transportation of the child is warranted, Security Forces (ACOS/SFOI) or AFOSI will transport a child when the immediate health and well being of a child is at risk. In all other cases, the sponsor's command should ensure adequate transport, as necessary.

   f. In accordance with the Child Protection Act, Child Protective Services has the authority to interview children on DODEA premises.

9. Protective Removal of Children from Military-Controlled Property.

   a. CPS may, in protective custody cases, transport and seek placement of military child(ren) and/or arrange for the initiation of child protective proceedings. CPS should notify the responsible FAR/FAO as soon as reasonably possible.

   b. CPS will notify and coordinate with the cognizant Navy ACOS Security & Fire Officer or the Air Force Chief of Security Police and the FAR/FAO in any case where removal of children from the on-installation quarters or facility for temporary protective custody is necessary for the protection of the child. If removal is warranted, a Security Officer will escort the CPS worker and the civilian police officer to assist in the transfer of the children into protective custody. In addition, the FAR/FAO will contact the appropriate command(s) and inform them of the circumstances of the situation and the removal of the child. In Navy FAP cases, FAR will contact the appropriate command(s) to ensure that a command representative is present during the removal of the child.

   c. CPS may receive a verbal ex parte order from the presiding judge. As soon as reasonably possible, CPS will contact the FAR/FAO regarding the protective custody/removal order.

   d. All children who are removed from their homes or a facility on the installation for protective purposes will be first examined at an appropriate medical treatment facility (MTF) whenever possible. The MTF will expedite these medical examinations in order to minimize the time required to place children into foster care. FAR/FAO will assist the CPS social worker in the coordination of medical appointments/services.

10. Court Representation. Presentation of cases to the court is the responsibility of CPS with representation by the Attorney General's office. Military personnel or federal employees, may be made available to testify in civilian court proceedings after coordination with the Navy Force Judge Advocate or the Air Force Staff Judge Advocate, in accordance with their respective service agreements. However, testimony as an expert witness will require approval by higher authority.

11. Treatment Programs. It is the policy of all parties to this agreement that within budgeting, personnel, and regulatory constraints, all available medical and social assets for use in treatment of military families will be utilized. CPS services plans may include military resources and programs for cases involving the maltreatment of children of military families.

12. Records.

   a. Requests for CPS/Court access to military records and investigative reports for investigation, processing, treatment, or prosecution of child maltreatment cases will be made to the Navy Staff Judge Advocate or the Air Force Staff Judge Advocate as appropriate. Requests for medical records shall be made through the Patient Administration Department, of the U. S. Naval Hospital Guam with concurrence from the Force/Staff Judge Advocate or Andersen Medical Clinic as appropriate. FAR/FAO will share information with CPS to the maximum extent available under law and regulation.

   b. CPS will furnish the responsible FAPCM/FAO with a copy of the Service Plan Agreement and will provide updates.

   c. The FAPCM/FAO shall make available to DoDEA any relevant information necessary to integrate a CPS Service Plan Agreement or CRC/FMCMT Treatment Plan into any services provided by or furnished by DoDEA.

13. Communications. Effective execution of this agreement can only be achieved through constant communication between the parties involved. Therefore, it is the policy of the parties in this agreement that open channels of communication will be used whenever questions, misunderstandings, or complaints arise. CPS will provide a representative to all Air Force FMCMT and Navy CRC meetings and be provided five working days notice by the FAPCM/FAO of such meetings. CPS will provide a representative to the Child Sexual Maltreatment Response Team (CSMRT) as needed to coordinate child sexual abuse cases. CPS will also invite, as appropriate, the FAPCM/FAO to any meeting sponsored by CPS concerning cases involving military members, or their dependents. CPS will be invited to attend meetings of the Navy/Air Force Family Advocacy Committees to coordinate policy and program issues.

14. Cooperation. The military signatories to this MOU will ensure the cooperation of all military officials in Guam. DoDEA signatory will ensure the cooperation of all DoDEA personnel. Government of Guam signatories will ensure the cooperation of all GOVGUAM personnel.

15. Amendment. This MOU may be amended at any time. Any party desiring to modify the MOU will notify the other parties in writing, thirty (30) days in advance of any modification. If modified, the MOU will be reviewed and resigned by all parties.

16. Review. A review and evaluation of the MOU will be conducted by the United States Navy/Air Force Family Advocacy Programs, CPS, and DODEA within each calendar year. If upon review no changes are deemed necessary, this MOU shall remain in effect until dissolved by one of the parties.

17. **Effective**. This MOU is effective upon signature by the parties and will remain in force until such time as any of the parties shall request its dissolution in writing.

Approved:

_____
CARL T.C. GUTIERREZ
Governor of Guam

Date: 4-18-01

_____
BERNARD H. FULLENKAMP
Colonel, U.S. Air Force
Commander, 36 ABW Andersen AFB S.

Date: 3/5/01

Approval as to Form:

_____
JOHN F. TARANTINO
Attorney General
Department of law

Date: 1/16/4

_____
TOM S. FELLIN
Rear Admiral, U.S. Navy
Commander U.S. Naval Forces Marianas

Date: 3/9/01

_____
DR. RICHARD TOM
Superintendent
DoDEA, Guam

Date: 3/5/01