David G. Matthews
PO Box 25177
GMF, Guam 96921
671-789-0818



**FILED**
DISTRICT COURT OF GUAM

FEB 20 2008

JEANNE G. QUINATA
Clerk of Court

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

David G. Matthews,                                          CV-07-00030

                Plaintiff,

      vs.

United States

              Defendant.

## OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

### PLAINTIFF'S RESPONSE TO DEFENDANT'S GENERAL MOTION TO DISMISS

1. It is obvious that the defendant will do almost anything in an attempt to dupe the court and derail this pro se litigant in his pursuit of justice. They will claim ignorance to facts and evidence by submitting frivolous motions, such as their motion for a more definite statement, which the plaintiff exposed in his opposition motion. They will misconstrue evidence, such as that contained in their motion to dismiss or, in the alternative, motion to strike, which the plaintiff will expose below. They will conduct shoddy investigations by failing to interview key witnesses, e.g., COMNAVMAR personnel, or failing to consider key pieces of evidence. Lastly, they will spew their drivel in the direction of the court,

# ORIGINAL

1

which is most egregious when the court's decisions rest on the veracity of the litigants. In this motion, the plaintiff will satisfy to the court that it is completely appropriate to continue this action and that it would be a miscarriage of justice to grant the defendant's motion to dismiss or, in the alternative, motion to strike.

2. Pursuant to Rule 8 Federal Rules of Civil Procedure, General Rules of Pleading, in his complaint, the plaintiff was required to provide a short and plain statement of the grounds upon which the court's jurisdiction depends, **a short and plain statement of the claim showing the pleader is entitled to relief** (emphasis added) and a demand for judgment for the relief the pleader seeks. He was not required to make legal arguments or cite cases, statutes or constitutional provisions.

3. In their motion to dismiss, or in the alternative, motion to strike, the defendant stated, "Here, Plaintiff fails to state factual allegations with sufficient specificity to support all elements of his claim." To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint "need not provide detailed factual allegations" but rather must simply allege fact sufficient "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp v. Twombly, 127 S. Ct. 1955, 164-65 (2007). The court "must accept as true all of the factual allegations contained in the complaint." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 n.1 (2002). A plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be

2

accepted as true and viewed in the light most favorable to the nonmoving party." Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989) (citations omitted). The court may dismiss a complaint "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swin Res. Sys., Inc. v. Lycoming County, 883 F.2d 245, 247 (3d Cir. 1989) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). "The issue is not whether [the claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997). Lastly, "A pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519 (1972)).

4. The court must accept as facts the following allegations in the complaint:

a. On June 15, 2005, during telephone conversations with the plaintiff and his spouse, Pereda had a statutory requirement to apprise them of the Privacy Act Statement (32CFR701.108). Pereda failed to do so. At Plaintiff's Exhibit A are case notes from Pereda where he referenced initiating a telephone conversation with the plaintiff on June 16, 2005. It should be noted that Pereda's case notes do not reference telephone conversations with the plaintiff and his spouse on June 15, 2005.

b. Mr. Pereda had a statutory requirement to apprise the plaintiff and his spouse of the Privacy Act prior to their June 17, 2005 interview, which he failed to do. LCDR Grunawalt opined Pereda violated the Privacy Act and they redacted portions of the

3

plaintiff's and wife's case files (Plaintiff's Exhibit A). At this stage in the litigation, without fulfilling discovery, the plaintiff believes Pereda intended to violate the Privacy Act by purposely failing to advise the plaintiff and his wife of the Privacy Act. At Plaintiff's Exhibit B are case notes from Pereda, dated 21 June 2005, where Pereda stated, "Mr. Matthews has not yet signed any FAP forms (e.g. Privacy Act Statement, intake forms, acknowledgement of receiving Family Advocacy Program description) as during his initial visit to FFSC with his wife on 17 June (prior to FAP learning of additional allegations purportedly involving Mr. Matthews), he was not being considered an offender." This is an important statement for a few reasons. First, Pereda admitted he did not advise the plaintiff of the Privacy Act Statement. Secondly, it infers Pereda administers the Privacy Act Statement to only suspected offenders, which is completely contrary to the statute. Either Pereda was somehow attempting to conceal his chicanery or, over the years as a FAP case manager, Pereda has violated the rights of countless "non-offenders," e.g., witnesses and victims, by failing to advise these categories of interviewees of their Privacy Act Statements. Pereda is no greenhorn; he should be considered a well-seasoned FAP case manager. According to the Washington University in St. Louis Magazine, Pereda, a 1975 graduate, "is employed by the U.S. Navy at the Navy Family Service Center in Guam. He has been employed in his job since 1989." During discovery, the plaintiff plans to investigate Pereda's violations, to include exploring all of his FAP cases during his approximate 16 year career as a case manager. Lastly, Pereda lied to the plaintiff and his spouse as to the purpose of the interview, which he stated the sole purpose was to "reunite the family," and he misrepresented the documents presented to the plaintiff's wife upon termination of the interview. He stated

4

the documents, which he had in his possession for the entire interview and did not explain or allow the plaintiff's spouse to read, were merely consent forms to allow him to interview their daughter. Further investigation reveals these two documents were the unread and unexplained Privacy Act Statement and Navy Family Advocacy Program Description.

c. Pereda unlawfully disclosed information to CPS, "another agency" as defined in the Privacy Act. Pereda should not have disclosed information provided by the plaintiff and his spouse, by allowing CPS in the June 17, 2005 interview, without first apprising the plaintiff and his spouse of the Privacy Act and receiving their express, written permission. This interview was scheduled and initiated by the defendant and conducted on a military installation. The plaintiff should have received detailed information as to how information provided by the plaintiff and his spouse was going to be used before allowing another agency to attend the meeting. If the defendant's actions are deemed appropriate, the defendant could always avoid Privacy Act and Navy Family Advocacy Program Description notifications by simply allowing CPS in all interviews. Information discussed during the June 17, 2005 interview was ultimately used against the plaintiff and his spouse at the military tribunal.

d. Prior to interviewing the plaintiff and his spouse on June 17, 2005, Pereda failed to apprise them of the Navy Family Advocacy Program Description. Pereda admitted he failed to do so. An important statement in the Program Description is, "FAP staff, if requested to attend a court or administrative proceeding, would be required to report what was discussed during the assessment interviews." The plaintiff and his spouse truly considered their interview to be a client-protected, clinical interview. To receive

5

Pereda's assurances that information was provided under this assumption, they asked on a couple of occasions whether they needed an attorney. Both Pereda and Camacho stated they didn't need an attorney and their only desire was to "reunite the family." Had they been apprised of the FAP Program Description (and the Privacy Act) prior to their interview, and apprised that information provided could be used against them in a military tribunal, they would never have consented to interviews or allow anyone to speak to their daughter.

e. Pereda falsified an official document, the Privacy Act Statement, by witnessing as a provider, when he did not administer the Privacy Act; Pereda backdated the Privacy Act Statement with the date "6/17/2005;" and Pereda affirmed by signing the Privacy Act Statement as the "FFSC counselor" that he explained the content of the Privacy Act. The plaintiff also references communications between Pereda and the plaintiff's spouse on 15 and 19 August 2005, where Pereda admitted he failed to apprise her of the Privacy Act and Navy FAP Program Description.

f. In September 2005, the plaintiff and his spouse were placed in a military tribunal for alleged child abuse, and as a result of the tribunal, the plaintiff and his spouse were placed in a federal registry as child abusers. The defendant used unlawfully obtained information against them in the tribunal, by violating the provisions of the Privacy Act and Navy Family Advocacy Program Description.

g. The defendant violated the Guam Organic Act, which guarantees equal protection, because the plaintiff was subjected to a military tribunal when his federal local-hire counterparts were not subject to these tribunals for similar allegations. Other stateside-

6

hire employees assigned to Anderson Air Force Base were not subject to these tribunals for similar allegations.

h. The defendant's actions created extreme emotional distress, because the defendant could not present a coherent argument or consensus among "subject matter experts" concerning his and his spouse's mandatory placement in the military tribunal. Mr. Paul Fisher, the senior COMNAVMAR attorney, was adamant the plaintiff and his spouse should not be in the tribunal. LCDR Grunawalt, another COMNAVMAR attorney, opined the plaintiff and his spouse should be in the tribunal because they were eligible beneficiaries for treatment at a military treatment facility, but that federal local-hire employees and federal local-hire employees who are also military retirees (true beneficiaries for treatment at military treatment facilities) were not subject to these tribunals for similar allegations. Mr. Lloyd, the director for DoD Family Advocacy, opined local-hire federal employees are not exempt from these tribunals.

i. Mr. Lloyd implied that in locations with a child protective service, federal employees are not subject to these military tribunals. Even after COMNAVMAR was apprised of Mr. Lloyd's opinion, the defendant continued to harass, embarrass and humiliate the plaintiff by keeping him in the central registry as a child abuser.

j. The defendant harassed the plaintiff and violated his privacy by placing him in a military tribunal for two allegations where there was no nexus to his job. One allegation involves spanking his daughter while on vacation in Saipan; the other, threatening to spank his daughter during off-duty hours.

k. The defendant failed to brief the plaintiff concerning the FAP program, which is a DoD non-discretionary requirement. In accordance with DoD 6400.1, C2.1.1 PS 2.1,

7

"All newly assigned personnel shall receive an orientation to the FAP, available family support services, and installation FAP policies."

l. The defendant continued to harass and cause extreme emotional distress when it failed to allow the plaintiff and his spouse to use the services of the Navy legal office to defend themselves, for an inherently military matter. It's even more egregious in that LT Weinthal, CNI, informed the plaintiff that he and his spouse could use the services of the Navy legal office and that Grunawalt overruled his higher headquarters. The defendant would, however, allow military personnel and their dependants to use the Navy legal services if they were implicated as child abusers and identified for FAP CRC tribunals.

m. The defendant harassed and humiliated the plaintiff by placing him and his spouse in a military tribunal and subsequent federal registry as child abusers when they were never charged or convicted of any crimes.

n. One of the most egregious acts committed against the plaintiff is the defendant's failure to allow procedural due process protections that are guaranteed in the Fourteenth Amendment to United States Constitution and in the Guam Organic Act, Bill of Rights, 1421b.(e), "No person shall be deprived of life, liberty, or property without due process of law." As stated in the complaint, the plaintiff's case is analogous to Miller v. Debuono (90 NY2d 783 (1997), where a nurse's aid was accused of hitting a patient. Under state law, her name was to be placed in a state registry. The New York Court of Appeals ruled she should have received extensive procedural protections before being placed in the registry. In Mathews v. Eldridge (424 US 319 (1976)), the Supreme Court ruled that the required due process procedures must be evaluated by balancing three factors: the value of the property or liberty interest, the cost to the government in providing more

8

procedure, and the risk of an erroneous decision without more procedure. The more valuable the interest, the more procedure required; the more costly the additional procedure, the less likely it is to be constitutionally required; the greater the chance of an error without additional procedures, the more likely such procedures will be constitutionally required. The plaintiff's property interest, his current and future employment with the federal government and security clearance, and liberty interest, good reputation both locally and within the Department of the Navy/DoD, were of great value, as exemplified in the plaintiff's stellar, unblemished employment history. The additional cost to the government was minimal to none by allowing additional due process; and the risk of error was great without additional procedures. Below is the procedural due process required when a person is placed in a FAP CRC tribunal:

**Neutral decision-maker.** Agency officials who have personally participated in the development of a case against a party, or who have a significant stake in the outcome, are generally prohibited from sitting in judgment on those matters. Substantial, off-the-record conversations by an agency official about the factual issues in a matter before the agency also preclude that agency official from acting as a decision-maker on that matter. The plaintiff understands Ms. Monica Tinkham, Family Advocacy Representative, and LCDR Kurt Grunawalt, COMNAVMAR attorney, who were his adversaries, were voting members at the tribunal. Grunawalt also played an integral role in developing the case against the plaintiff, and Grunawalt continually coordinated and briefed the COMNAVMAR and CNI chains of command. On July 26, 2005, Ms. Baza, the acting Navy FFSC director sent an email to CDR Beaty, COMNAVMAR executive officer, stating, "If the case is heard "here", our primary Line Officer CRC member (LCDR

9

Washington) who is a personal friend of D's shouldn't sit on this case review." Ms. Baza questioned LCDR Washington's veracity to be a "neutral decision-maker" and recommended his recusal, but allowed others hostile to the plaintiff to be decision-makers. Per OPNAVINST 1752.2A, "The case status determination should be made by a simple majority of the **permanent members** (emphasis added) of the CRC." For Ms. Baza to even suggest that LCDR Washington, a permanent member, should be recused is outrageous, unethical and exemplifies the defendant's wanton disregard for the rights of the plaintiff to have a neutral decision-maker. **The plaintiff did not have a neutral decision-maker.**

**An opportunity to make an oral presentation to the decision-maker.** In an email dated July 19, 2005, the plaintiff asked Grunawalt, "I request that my attorney and I be allowed to present our defense to the review committee..." Grunawalt responded, "Under OPNAVINST 1752.2A neither you nor your attorney are entitled to be present at the CRC meeting..." The plaintiff and his spouse have no idea as to the specific information or evidence discussed at the tribunal.

**Opportunity to present evidence or witnesses to the decision-maker.** Grunawalt stated, "...you are provided the opportunity to submit to the CRC, via your case manager, a written statement, other relevant written statements, and any other documents you wish to be seen by committee members during the meeting." According to the defendant, the only way the plaintiff could present evidence or witnesses to the tribunal was to render written statements or documents to Pereda, the individual who violated the plaintiff's rights, violated DoD policies and falsified an official document.

10

**A chance to confront and cross-examine opposing witnesses or evidence.** Grunawalt stated, "Military offenders, as well as civilian offenders, cannot be represented at the CRC by legal counsel, they are similarly limited in their ability to obtain documents not kept in their own file, and they similarly cannot cross-examine the FAP case manager, or anyone else, at the CRC."

**The right to have an attorney present the individual's case to the decision-maker.** The plaintiff was not allowed an attorney at the tribunal.

**Burden of proof.** The burden of proof is generally placed on the party initiating the proceeding. In the case of actions against a private party, the burden is on the agency. In an email, the plaintiff asked Grunawalt, "During a FAP case review, who has the burden of proof, the alleged offender or the command?" Grunawalt replied, "No one has the burden of proof to prove anything."

**Discovery.** In the plaintiff's case where decisions rest on facts, it was necessary to allow the plaintiff the opportunity for discovery, i.e., investigation and accumulating evidence, in order to give the plaintiff a chance to show the facts upon which the proposed deprivation is based are untrue. The defendant stated, "...offenders..., they are similarly limited in their ability to obtain documents not kept in their own file."

**Statement of decision.** Parties have a right to an opinion that is consistent with past agency decisions, or that explains reasons for departing from precedent. The defendant could not even agree as to the plaintiff's mandatory involvement in the tribunal. Any statement of decision is suspect.

**Monumental Issue before the Court.** The plaintiff believes there are two issues before this court concerning procedural due process rights guaranteed in the U.S. Constitution

11

and the Guam Organic Act. The first, on a micro level, is the plaintiff's pain and suffering, because he was deprived of his fundamental rights to due process. The second concerns all members of the United States armed forces. Hundreds of thousands of men and women serving in the armed forces have volunteered to lay down their lives for the freedoms and rights that Americans enjoy – one of which is the basic right to due process, as guaranteed by the U.S. Constitution and, locally, Guam's Organic Act. The actions and policies of the defendant in regards to due process are indicative of their total disregard for the fundamental rights of these soldiers, sailors, airmen and Marines. The court's decision in Matthews v. United States, CV-07-00030, will have a profound impact on military personnel who have been similarly aggrieved and who will be subject to FAP CRC tribunals in the future.

o. The plaintiff was outraged that the defendant used his daughter's medical information in the tribunal when, again, there was no nexus to his job. This is a HIPAA violation, and is as outrageous, unlawful and inappropriate as a private employer obtaining an employee's child's medical information without permission and reviewing it within a company committee.

p. The tribunal and the subsequent placement in a federal registry are deemed adverse or disciplinary actions, even by Mr. Fisher, an attorney for the defendant. The defendant failed to consider the Douglas Factors before placing the plaintiff in the registry.

q. The defendant failed to answer the plaintiff's official grievance in accordance with DoD Personnel Manual, DoD 1400.25-M, Administrative Grievance System. This was a non-discretionary requirement.

r. The defendant failed to provide FOIA information requested on December 13, 2005. The defendant failed to remove the plaintiff's and wife's names from the federal registry and provide FOIA information, which was requested in a letter in May 2007. The plaintiff feels he has exhausted administrative remedies, because he has contacted the DoD inspector general's office in reference to the defendant's failure to provide FOIA information. A DoD hotline representative gave the plaintiff a nebulous answer and seemed to chastise the plaintiff when he suggested the defendant had a statutory timeline to respond.

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S CLAIM THAT PLAINTIFF FAILS TO ESTABLISH FACTS TO SUPPORT A CLAIM OF INTENTIAL INFLICTION OF EMOTIONAL DISTRESS

The plaintiff has made at least eighteen (18) allegations against the defendant, any one of which would cause a reasonable person emotional distress. It's unfathomable for the defendant to suggest that even a compilation of a few allegations would not cause extreme emotional distress. The plaintiff's statutory and regulatory rights were violated; he was placed in a military tribunal when the defendant could not even agree amongst themselves as to his mandatory involvement; he was treated differently than his peers; he received no procedural due process rights; his FOIA and grievance requests were unanswered; he was identified as a child abuser when he committed no crimes; he was placed in a federal registry; and he was compelled to retire prematurely to ensure a meager retirement with medical insurance for his family. The court need only query Fisher and Grunawalt, from the defense, to understand the plaintiff's extreme anger, hatred and resentment - let alone his family and friends. The plaintiff likens his extreme emotional distress to that of a divorce. The plaintiff was married to the defendant for

13

twenty years, he was completely loyal and faithful, and both he and the defendant reaped the benefits of the relationship. The defendant had a top-notch, dedicated employee and the plaintiff had job security for his family and the pleasure of serving the United States. The defendant later abused the plaintiff, so the plaintiff was forced to end the relationship. The plaintiff was left bitter and broken, defamed and humiliated, and without sufficient financial resources to enjoy the life and level of comfort he once had. The plaintiff does not expect the defendant to acknowledge emotional distress, because by doing so, they prove his case.

## PLAINTIFF'S OBJECTION TO DEFENDANT'S CLAIM THAT PLAINTIFF FAILS TO STATE FACTS SUFFICIENT TO SUPPORT A VIOLATION OF PRIVACY CLAIM

The plaintiff has provided sufficient, detailed information to support his invasion of privacy claims. Throughout this litigation, the defendant has failed to provide any substantive information to answer the complaint or display a general competence to continue litigation. In their current motion under the aforementioned heading, they did present two ill-conceived issues, which the plaintiff will address:

a. The defendant states, "The Plaintiff fails to establish that Defendant maintains a system of records, which is an essential element of a Privacy Act claim." According to the Department of Navy Index of Privacy Act System of Records, FAP records are identified under Privacy Act notice #N01752-1, Family Advocacy Program System. The defendant knows the system of records and this level of detail is not required in the complaint.

b. In paragraph 2 on page 3 of the defendant's motion to dismiss, the defendant alleges, "Although Debora Matthews was the target of the interview, Plaintiff insisted on

14

attending the meeting to provide moral support to his wife. Pereda allowed him to do so." In paragraph 3 on page 5, the defendant stated, "It defies common sense for Plaintiff to interject himself into a child abuse interview in which he was not invited..." This is a lie and is not supported by the defendant's own documentary evidence. To the contrary, at Plaintiff's Exhibit A are case management notes prepared by Mr. Pereda. In his notes, dated 16 June 2005, Pereda stated, "**Call made to Mr. Matthews for the purpose of scheduling a FAP assessment interview with him** (emphasis added) and wife regarding reported incident of child abuse." The court should note a portion of the exhibit was redacted by the defendant, "due to the lack of Privacy Act notification." The plaintiff plans to depose Pereda during discovery.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

I. The defendant's comments are illogical; inconsistent at best. In the paragraph above, the defendant claims the plaintiff failed to identify the specific system of records. In paragraph I., the defendant suggests too much information is presented. The plaintiff established that Pereda "maintained" case notes as of June 16, 2005 and included the specific statute Pereda violated. Naturally, the defendant wants it stricken because they would have to answer this specific allegation.

II. This verbiage is completely appropriate as the plaintiff is stating with specificity the defendant's statutory duty and duty breached. The plaintiff acknowledges the defendant could share information with CPS, e.g., a police report. However, when the defendant initiates a record and asks the plaintiff to provide any personal information, the defendant must disclose the intended use of that information and receive the plaintiff's prior written approval to furnish that information to "another agency," as defined in the Privacy Act.

As early as June 15, 2005, the first time the defendant contacted the plaintiff, the defendant had a statutory duty to apprise the plaintiff of the Privacy Act Statement and the defendant's intended use of the information requested, to include furnishing information to CPS, "another agency."

III. This paragraph alleges the defendant falsified a document. The results of an investigation are germane if the defendant will later claim the plaintiff's wife, who was jointly interviewed, was properly informed of the Privacy Act Statement. The investigation would also shed light on Pereda's veracity and the subsequent fidelity of his testimony at the plaintiff's tribunal.

IV. To state the term "military tribunal" has one definition is fallacious. The plaintiff is aware a court martial can be referred to as a "military tribunal." The FAP CRC is a military program and a tribunal is merely a committee or board appointed to adjudicate in a particular matter. If the defendant finds the term objectionable, it was much more offensive to be placed in the military tribunal. Perhaps a more accurate description is military "inquisition," an investigation that violates the privacy or rights of individuals (American Heritage Dictionary).

V. This statement is completely germane to the plaintiff's claim that he was not afforded equal protection. A reasonable person would react with outrage, i.e., extreme emotional distress, if treated differently than his colleagues, especially if the reasons are arbitrary, capricious and incoherent.

VI. These paragraphs require an answer, because they show the defendant doesn't know its own policies for placing a federal employee in a FAP CRC. Grunawalt was emphatic the DoD mandated certain federal employees in FAP CRCs. Lloyd, the DoD official,

16

referred it to the local staff judge advocate. Fisher, another of the defendant's attorneys, had a completely different position than Grunawalt or Lloyd. A reasonable person would be outraged if placed in a tribunal when there is no consensus among agency officials.

VII. In this paragraph, the defendant fails to pay attention to detail and requests the same action as the preceding paragraph.

VIII. This paragraph should remain and be answered by the defendant. In this paragraph, the defendant is making a feeble attempt to justify a violation of the plaintiff's right to equal protection, which contributed to the plaintiff's emotional distress.

IX. In the first full paragraph on page 9, the plaintiff is alleging an equal protection violation by the defendant, which contributed to emotional distress. The plaintiff is alleging an equal protection violation in the second full paragraph, because employees with a local child protective service are not subject to these military tribunals. This is an invasion of privacy and contributed to emotional distress.

X. The defendant is cherry picking and their comments are illogical. It is patently obvious that the paragraph in question is germane to the plaintiff's allegations of invasion of privacy, because the defendant had a right to privacy during non-duty hours and, especially, when there was no nexus to his job. "Employment rights" is relevant to his equal protection claims which, when violated, caused extreme emotional distress.

XI. This paragraph shows the defendant had a regulatory, non-discretionary requirement to apprise the plaintiff of the FAP program, which they didn't fulfill. The defendant then attempted to pass the blame to another agency within COMNAVMAR. It's ludicrous to suggest a violation of these indoctrination procedures, and then a subsequent placement

17

in a FAP CRC tribunal, would not cause extreme emotional distress. The plaintiff was never put on notice that he could experience a FAP tribunal.

XII. This paragraph should remain and be answered by the defendant. First, it shows the plaintiff did not receive equal protection. Secondly, it shows Grunawalt's distain for the plaintiff by overruling a decision from his higher headquarters. The plaintiff was afforded no military legal defense services, for an inherently military program, that neither he nor his civilian defense counsel was allowed to attend; which was afforded to his military counterparts and their family members. The defendant's actions infuriated the plaintiff, causing severe emotional distress.

XIII – XVI. These paragraphs should remain as they explain, in detail, the plaintiff's procedural due process rights that were violated, which are guaranteed in the U.S. Constitution and the Guam Organic Act. The defendant must justify their actions using the compelling state or government interest test, which should be reviewed under the "strictest scrutiny." The defendant requests the plaintiff's allegation of HIPAA violations be stricken. The defendant had no right to access the plaintiff's daughter's private medical information and to present it at the military tribunal, and has the burden to justify their actions using the compelling state or government interest test, under the "strictest scrutiny." The plaintiff considers these actions as violations of fundamental rights to privacy and equal protection. The defendant moves to strike the plaintiff's allegations that the defendant failed to consider the Douglas Factors before placing him in the registry. The plaintiff considers this a non-discretionary duty, which was breached. The aforementioned violations created immense emotional distress and invaded the plaintiff's privacy.

18

XVII. This paragraph should remain as drafted and the defendant should answer the complaint. The plaintiff stated he requested information and the defendant had a responsibility to provide the information, which the defendant failed to do. This intensified the plaintiff's emotional distress.

## SUMMARY

The plaintiff has expounded on his invasion of privacy allegations and emotional distress, and has provided rational arguments against all of the defendant's motions to strike. The defendant is required to answer the plaintiff's specific allegations of statutory and regulatory violations. In addition, the defendant violated the plaintiff's fundamental rights, i.e., right to privacy, right to raise children free from unnecessary governmental interference, right to procedural due process and right to equal protection, which are guaranteed in the U.S. Constitution and Guam's Organic Act. Once the plaintiff alleges a fundamental right has been violated by the defendant (United States), the defendant must come forward and meet its substantial burden of demonstrating a compelling interest, to be reviewed using the "strictest scrutiny." If in the answer to the complaint, the defendant claims a compelling state or government interest, through discovery the plaintiff will require the defendant to explain similar programs in place for other federal employees, to include stateside-hires employed with all federal agencies on Guam. For example, the plaintiff will ask the defendant to identify its specific programs in place and justification for tribunals at the agency level, other agencies employees' rights to procedural due process in regards to these tribunals, the specific federal registries in which their substantiated offenders can be placed, agencies' rights to unilateral access to dependants' medical information; for stateside-hire employees assigned to the

Department of Justice, Department of State, Postal Service, etc.; when their employees are implicated in spouse or child abuse allegations, regardless of when (on duty or off duty) and where (on island or off island) the incidents allegedly occur, and regardless of whether the allegations are deemed crimes or not. The defendant will be required to explain the nexus to the jobs for the aforementioned employees which results in the defendant's invasion of privacy, especially when incidents allegedly occur during non-duty hours. The plaintiff will also require from the defendant information concerning the agencies' training and notification procedures to their employees concerning these particular programs, standard operating procedures, procedures for ensuring all alleged perpetrators are identified and brought before these tribunals and historical data concerning similar cases adjudicated before the agencies.

PRAYER FOR RELIEF

. The plaintiff will prove far beyond the preponderance of evidence that the defendant violated his right to privacy and caused severe emotional distress of substantial quantity and enduring quality that no reasonable person in a civilized society should be expected to endure. The plaintiff prays the court will dismiss the defendant's motion to dismiss and all motions to strike, and allow the plaintiff to continue litigation.

Dated this 20th day of February, 2008.

David G. Matthews
PO Box 25177, GMF, Guam 96921
davedeb19@hotmail.com
671-789-0818

# TABLE OF AUTHORITIES CITED

Pursuant to Local Rule 7.1, Motion Practice, (g) Length of Briefs and Memoranda, all briefs and memoranda in excess of fifteen (15) pages shall contain a table of authorities cited. Due to the level of detail required in responding to the defendant's motion, the plaintiff was unable to keep his opposition to less than fifteen pages. The plaintiff is therefore required to cite authorities. This pro se litigant, who is untrained in preparing legal documents, untrained in citing authorities and without the necessary reference materials to ensure a perfect product, will attempt to satisfy this requirement to the court. If the court is not satisfied with the plaintiff's efforts and/or requires additional information on a particular citation, the plaintiff prays for leave of court to perfect his table of authorities cited.

## Court Rules

1. Local Rule 7.1, Motion Practice, (g) Length of Briefs and Memorada, Table of Citations Cited.
2. Rule 8 Federal Rules of Civil Procedure, General Rules of Pleading, page 2.
3. Rule12(b)(6) Federal Rules of Civil Procedure, page 2.

## Cases

1. Bell Atlantic Corp v. Twombly, 127 S. Ct. 1955, 164-65 (2007), page 2.
2. Swierkiewicz v. Sorema, NA., 534 U.S. 506, 508 n.1 (2002), page 2.
3. Twombly, 127 S. Ct. at 1974, page 2.
4. Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989), page 3.
5. Swin Res. Sys., Inc. v. Lycoming County, 883 F.2d 245, 247 (3d Cir. 1989)(citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)), page 3.
6. Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997), page 3.
7. Estelle v. Gamble, 429 U.S. 97, 106 (1976)(quoting Haines v. Kerner, 404 U.S. 519 (1972)), page 3.
8. Miller v. Deubuono, 90 NY2d 783 (1997), page 8.
9. Mathews v. Eldridge, 424 US 319 (1976), page 8.

## Statutes/Codes

1. 32CFR701.108, page 3.
2. Privacy Act of 1974, Public Law 93-579, as codified at 5 U.S.C. 552a, page 3, 4, 5, 6,15, 16.

## Guam Organic Act

1. 1421b. Bill of Rights, (n), page 6, 19.
2. 1421b. Bill of Rights, (e), page 8, 12, 18, 19.

## United States Constitution

1. Fourteenth Amendment, page 8, 11, 12,18, 19.

## DoD Regulations and Instructions

1. DoD 6400.1, C2.1.1 PS 2.1, page 7.
2. OPNAVINST 1752.2A, page 10.
3. DoD Personnel Manual, DoD 1400.25-M, page 12.

# CASE MANAGEMENT NOTES

**DATE:** 16 June 2005

Call made to Mr. Matthews for the purpose of scheduling a FAP assessment interview with him and wife regarding reported incident of child abuse. Mr. Matthews was not available and message was left for him to return case manager's call as soon as possible.

Mr. Matthews returned case manager's call and was informed of the Family Advocacy Referral regarding his daughter. An appointment was scheduled for him and wife to be seen tomorrow, 17 June 2005, at 0900.

Vincent P. Pereda, MSW, BCD
FAP Case Manager

**Date:** 17 June 2005    FAP assessment interview of 17 June 2005 redacted due to lack of Privacy Act notification.



**DATE:** 21 June 2005

Due to new information received by FAP and CPS relative to an additional allegation of child maltreatment against Desiree Matthews, with Mr. Matthews as the alleged offender (a spanking with a belt that reportedly resulted in bruising), FAP and CPS are required to expand assessment efforts to include evaluation of this incident allegedly involving Mr. Matthews. Mr. Matthews has not yet signed any FAP forms (e.g. Privacy Act Statement, intake forms, acknowledgement of receiving Family Advocacy Program description) as during his initial visit to FFSC with his wife on 17 June (prior to FAP learning of additional allegation purportedly involving Mr. Matthews), he was not being considered as an offender. As such, he was not provided any FAP forms to sign. As the FAP assessment process ensues (e.g., additional interview with Mr. Matthews), FAP forms will be presented to him for signature.

Vincent P. Pereda, MSW, BCD
FAP Case Manager