# ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
MIKEL SCHWAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7334

Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM

FEB 28 2008

JEANNE G. QUINATA
Clerk of Court

## DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

DAVID G. MATTHEWS,

        Plaintiff,

vs.

UNITED STATES OF AMERICA,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. 07-00030

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION TO STRIKE**

## SUMMARY OF REPLY

The Defendant, UNITED STATES OF AMERICA, moved to dismiss the Complaint because the Plaintiff failed to state a cause of action upon which relief can be granted. In the alternative, Defendant moved to strike potions of the Complaint as immaterial, impertinent, or scandalous.

"A motion to dismiss pursuant to Rule 12(b)(6) [of the Federal Rules of Civil Procedure] tests the legal sufficiency of a claim." *Keiser v. Lake County Superior Court*, 2005 U.S. Dist. LEXIS 40378, *2 (N.D. Cal. 2005). "Because the focus of a 12(b)(6) motion is the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to

1

the fact of the Complaint." *Id.* "Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable theory or failed to allege sufficient facts under a cognizable theory." *Id.* "Further, dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim." *Id.* at *3. "In considering a 12(b)(6) motion, the Court accepts the plaintiff's allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Id.*

Plaintiff's Opposition states that the Defendant failed to conduct investigations to determine and understand the claims set forth in his Complaint. However, it is the Plaintiff's burden to set forth sufficient facts to support his claims. Where a complaint is vague or insufficient, the Defendant is not obligated to conduct investigations to "fill in" the holes of Plaintiff's Complaint. *See Rannard v. Lockheed Aircraft Corp.*, 157 P.2d 1, 5 (Cal. 1945) (noting that a plaintiff is required to set forth in his complaint the essential facts from the case with reasonable precision and sufficient particularity to acquaint the defendant with the nature, source and extent of his cause of action.).

Assuming the truth of Plaintiff's allegations in the Complaint, Defendant can discern only two claims: 1) Intentional Infliction of Emotional Distress ("Emotional Distress"), and 2) Invasion of Privacy ("Privacy"). However, Plaintiff's Opposition to Defendant United States of America's Motion to Dismiss or, in the Alternative, Motion to Strike ("Plaintiff's Opposition") is chocked full of new facts and new causes of action not pled in his Complaint. Because the purpose of a 12(b)(6) motion is to test the legal sufficiency the claims set forth in a complaint, the court should not entertain the additional allegations and claims that Plaintiff did not include in his Complaint when reviewing the four corners of Plaintiff's Complaint.

2

In reviewing Plaintiff's Privacy claim, the court should consider whether Plaintiff's Complaint fails to allege an improper and unauthorized disclosure by the Defendant. As asserted in Defendant's Motion to Dismiss, information during the Family Advocacy Program meeting on June 17, 2005 was disclosed by the Plaintiff himself, not by the Defendant. Conveniently, Plaintiff's Opposition fails to address this assertion.

Plaintiff's Complaint fails to allege any facts that characterize the actions of the United States as "extreme" or "outrageous." Further, Plaintiff's Complaint fails to allege any facts to support the claim that Plaintiff suffered "extreme emotional distress." In an attempt to bootstrap the deficient parts of his Complaint, Plaintiff alleges additional facts and claims, including constitutional due process violations, due process violations based on the Guam Organic Act, and equal protection violations. Plaintiff also infers Freedom of Information Act ("FOIA") violations. However, the bases of Plaintiff's Complaint are Emotional Distress and Privacy claims. The United States would advocate that the court not entertain Plaintiff's additional causes of action. However, should the court decide to entertain the additional causes of action, the following sections address Plaintiff's additional claims.

## REPLY TO SPECIFIC POINTS

### 1. Plaintiff's Claim of Violation of Due Process

This section presupposes that the Court does not reject Plaintiff's claim of violation of due process for failure to include the claim in the Complaint. Plaintiff's due process claim can be found in Section "n" of Plaintiff's Opposition.

The doctrine of sovereign immunity prohibits all suits against the United States unless it gives consent. "The United States is immune from liability in actions alleging the violation due process and equal protection rights under the Fifth and Fourteenth Amendments." *Civil Actions*

3

*Against the United* States, §1:4 (West 2002 ed.) (citing to *Jaffee v. U.S.*, 592 F.2d 712 (3d Cir. 1979) and *Chapoose v.* Hodel, 831 F.2d 931 (10th Cir. 1987)). Accordingly, the United States is also immune from liability from claims alleging violation of due process rights under the Guam Organic Act. It is clear that Plaintiff's due process claim must fail.

Construing Plaintiff's Opposition in a light most favorable to him, Plaintiff's "due process claim" may be construed as a claim for violation of the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq. ("APA"). The APA provides judicial review of final agency actions in the event the conduct is not subject to some other legal remedy. 5 U.S.C. § 702. However, under the APA, "if the agency's regulations require resort to an intra-agency appeal process, and provided that final agency action is stayed pending the outcome of such an appeal, a person aggrieved by an agency action <u>must</u> exhaust that process before seeking judicial review." *Federal Civil Practice Manual*, Office of Legal Education, p. 18 (Feb. 2003) (citing to *Darby v. Cisneros*, 509 U.S. 137, 153-54 (1993)). An appeal process is available to the Plaintiff. (See OPNAVINST 1752.2A, Enclosures 9 and 10, attached hereto as Exhibit "A"). Plaintiff failed to exhaust the appeal process prior to filing his Complaint.

Thus, even construing Plaintiff's claim in a light most favorable to him, a violation of APA claim must fail in all portions of Plaintiff's Complaint alleging due process violations and therefore must be stricken.

### 2. Plaintiff's Claim of Violation of Equal Protection

As explained in the preceding section, the United States is immune from liability in actions alleging the violation of equal protection rights under the Fifth and Fourteenth Amendments and the Guam Organic Act. Accordingly, Plaintiff's claim for violation of his

4

Equal Protection rights must be dismissed and all portions of Plaintiff's Complaint alleging Equal Protection violations must be stricken.

### 3. Plaintiff's Claim of Violation of the Freedom of Information Act ("FOIA")

Plaintiff's Complaint makes inferences of FOIA violations. Specifically, Plaintiff alleges that FOIA violations occurred when he: 1) "requested all communications concerning the FFSC cases from COMNAVMAR and CNI; 2) "requested the findings of LT Chiappetta's command directed investigation"; and 3) "asked. . . for copies of the Navy's adjudication of his official grievance." *See* Plaintiff's Complaint, pg. 17.

FOIA requires exhaustion of administrative remedies before seeking judicial relief. *See In re Steele*, 799 F.2d 461, 465 (9th Cir. 1986). Section 552(a)(6)(A)(ii) of FOIA provides an administration appeal process following an agency's denial of a FOIA request. Plaintiff failed to file an appeal with the agency that denied the requests. In fact, Plaintiff admits that he merely "contacted the DoD inspector general's office in reference to the defendant's failure to provide FOIA information." *See* Plaintiff's Opposition, pg. 13. Accordingly, Plaintiff's violation of FOIA claim must be dismissed.

Assuming, *arguendo*, the Court determines that Plaintiff exhausted remedies by filing an administrative appeal, Plaintiff is not entitled to the information he requested. Section 552(b) of the FOIA sets forth exceptions to the government's disclosure requirements. Of most significance are subsections 4, 5, and 6. 5 U.S.C. § 552(b)(5)-(6). Subsection 5 provides that privileged or confidential information is an exception to the disclosure requirements. Subsection 6 provides that memorandums or letters which would not be available by law to a party in litigation with a government agency are also exceptions. Finally, subsection 6 provides that personnel and medical files and similar files, the disclosure of which would constitute a clearly

5

unwarranted invasion of personal privacy, is another exception. 5 U.S.C. § 552(b)(6). Here,

Plaintiff's request for all communications concerning FFSC cases, including cases unrelated to

Plaintiff's case, would be a clear invasion of the personal privacy of the parties to the FFSC

cases. Also, Plaintiff's request for "LT. Chiapetta's command directed investigation" is United

States' litigation report, which is provided to its attorneys in anticipation of litigation, and is

protected by attorney work product privilege. Further, United States responded to Plaintiff's

request for the Navy's adjudication of his official grievance by stating that such records did not

exist. The United States cannot disclose what is non-existent or not in its possession.

### 4. Plaintiff's Claim of Intentional Infliction of Emotional Distress

To state an Emotional Distress claim, Plaintiff must show: "(1) outrageous conduct by the

defendant; (2) an intention of causing or reckless disregard of the probability of causing

emotional distress; (3) that the plaintiff has suffered severe or extreme emotional distress; and (4)

actual and proximate causation of the emotional distress by the defendant's outrageous conduct."

*Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 736 (C.D. Cal. 1986).

On page 13 of Plaintiff's Opposition, Plaintiff lists the acts that he considers "outrageous

conduct" as follows;

> The plaintiff's statutory and regulatory rights were violated; he was placed in a
> military tribunal when the defendant could not even agree amongst themselves as
> to his mandatory involvement; he was treated differently than his peers; he
> received no procedural due process rights; his FOIA and grievance requests were
> unanswered; he was identified as a child abuser when he committed no crimes; he
> was placed in a federal registry; and he was compelled to retire prematurely to
> ensure a meager retirement with medical insurance for his family.

Plaintiff's Complaint, p. 13. As explained in the preceding sections 1 and 2 of this Reply,

Plaintiff's equal protection, due process, and in the alternative, APA claims must fail as a matter

of law. Thus, Plaintiff cannot bolster his allegations of "outrageous conduct" by claiming

violations of Equal Protection and Due Process rights and the APA. Further, as explained in the preceding section 3 of this Reply, Plaintiff's claim of violation of FOIA must also fail as a matter of law.

In this case, the only other allegations of "outrageous" conduct is the Defendant's finding that Plaintiff is a "child abuser," placement of Plaintiff in the Central Registry, and compelling Plaintiff to retire prematurely. Plaintiff fails to allege facts sufficient to support his claim of "outrageous conduct." First, the Case Review Committee's ("CRC") definition of abuse goes beyond physical abuse. It includes physical injury, sexual maltreatment, emotional maltreatment, deprivation of necessities, or combinations. (See DoDD 6400.1, Enclosure 1, attached hereto as Exhibit "B"). Even though the Plaintiff was not charged with a crime, the CRC still substantiated his treatment of his child as "child abuse" according to Department of Defense's directive. Further, because of the CRC's substantiation of the existence of child abuse, Plaintiff was placed on a Navy Central Registry, which is a Navy database for identifying and recording information on child abuse. (See OPNAVIST 1752.2A, Enclosure 1, attached hereto as Exhibit "C"). The Navy Central Registry is used as an aid for screening applications for Navy family daycare providers and child care providers. (See Exhibit "C", pg. 2). Based on the CRC's substantiation of child abuse, the Defendant did not act outrageously.

Beyond Plaintiff's bald conclusion that he was compelled to retire prematurely, Plaintiff's Complaint and Opposition offers no facts to support this allegation. Thus, Plaintiff fails to set forth facts sufficient to support the first element of an Emotional Distress claim.

Further, Plaintiff's Complaint is totally devoid of any facts to support his claim that he experienced severe emotional distress as a result of Defendant's actions. Plaintiff's Opposition repeatedly concludes that Defendant's acts "would cause a reasonable person distress." *See*

7

Plaintiff's Opposition, p. 13. However, it is insufficient to merely conclude that "a reasonable person" would suffer from severe emotional distress as a result of Defendant's actions. Plaintiff must allege that he experienced severe emotional distress. Emotional Distress claims are not strict liability claims. The Court cannot assume Plaintiff's damages; Plaintiff must allege that he suffered severe or extreme emotional distress. Accordingly, Plaintiff fails to allege facts sufficient to support an Emotional Distress Claim.

### 5. Plaintiff's Claim of Invasion of Privacy.

To establish a wrongful disclosure of the Privacy Act of 1974, 5 U.S.C. § 552a(b), Plaintiff must set forth facts sufficient to support an allegation that Defendant improperly disclosed information to Guam Child Protective Services. First, according to the Memorandum of Understanding between the Navy's Family Advocacy Program and Guam Child Protective Services, the two agencies are required to communicate and work together in investigating allegations of child abuse that occur on base. *See* Defendant United States of America's Motion to Dismiss or, in the Alternative, Motion to Strike, Exhibit A. Second, any disclosure to Guam Child Protective Services on June 17, 2005 was made by Plaintiff, and not Defendant. Plaintiff's wife, and not the Plaintiff, was the target of the joint assessment evaluation that took place on June 17, 2005. However, the Plaintiff attended the evaluation on his own accord and volunteered damaging information, which led the Family Advocacy Program's case worker and Guam Child Protective Service's case worker to target him as potential child abuse offender.

Therefore, the United States respectfully requests the Court to enter an Order dismissing Plaintiff's Complaint, or in the alternative, striking portions of the Complaint.

//

//

8

Respectfully submitted this 28th day of February, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By _____
MIKEL W. SCHWAB
Assistant U.S. Attorney
JESSICA F. CRUZ
Assistant U. S. Attorney

9

**CERTIFICATE OF SERVICE**

I, Jacqueline Emmanuel, Administrative Assistant, working in the U.S. Attorney's Office, in the District of Guam, hereby certify that, on February 26, 2008, I caused to be served by certified mail a copy of the "Defendant's Reply in Support of Motion to Dismiss or, in the Alternative, Motion to Strike", in Civil Case No. 07-00030, David G. Matthews vs. United States of America, to the following *pro se* of record:

David G. Matthews
P. O. Box 25177
Barrigada, GU 96921

JACQUELINE EMMANUEL
Administrative Assistant

## PROCEDURES FOR REVIEW OF CRC DECISIONS

1. **General**. Case Review Committee (CRC) decisions are, subject to the formal review process set out below, final as to all cases arising under the Navy's Family Advocacy Program (FAP). CRC decisions to substantiate or unsubstantiate the allegations in cases involving child sexual abuse are reviewed in accordance with enclosure (8). Under the conditions set forth below the CRC decision to substantiate or unsubstantiate allegations may be reviewed by the Headquarters Review Team (HRT). The HRT will review all available relevant information, and make a recommendation to the Assistant Chief of Naval Personnel, Personal Readiness and Community Support (Pers-6) as to whether the CRC decision should be upheld or overturned. The review will not consider the propriety of any actions taken by a commanding officer as a result of the CRC's findings. A service member who considers himself or herself wronged by the actions of his/her commanding officer may seek redress through other means, to include Request Mast procedures or filing a complaint under Article 138, Uniform Code of Military Justice (UCMJ).

2. **Review Process Procedures**

   a. Once the CRC has made a determination as whether the allegations are substantiated or unsubstantiated, the Family Advocacy Representative (FAR) will forward a report of the CRC's decision to the alleged military offender and/or victim's commanding officer. Commands will take appropriate steps to ensure the CRC determination is forwarded to alleged civilian offenders and victims. The report shall contain the following information:

      (1) The names of the parties involved in the case;

      (2) The CRC decision and recommendation;

      (3) The positions/disciplines that were present and participated in the decision and recommendations;

      (4) A synopsis of the information/documents considered and the information relied upon;

      (5) A Statement of Rights letter (attached at the end of this enclosure) for the alleged offender or victim, as appropriate.

Enclosure (9)



GOVERNMENT EXHIBIT

A

b. Upon receipt of the CRC report and recommendations, the alleged offender, victim or sponsor's commanding officer or his/her designee will:

(1) Review and discuss the case summary with the alleged offender, or victim, or sponsor as appropriate. The commanding officer will exercise his/her discretion as to whether the commanding officer's intended response to the CRC's recommendations are to be discussed.

(2) Have the alleged offender, victim or sponsor review and complete the Statement of Rights which outlines his/her right to request review.

c. The following individuals may request review of the CRC determination to substantiate/unsubstantiate the allegations of abuse:

(1) <u>Alleged Military Offender</u>. The installation CRC must have substantiated abuse on the part of the military offender submitting a request.

(2) <u>Alleged Civilian Offender</u>. The installation CRC must have substantiated abuse on the part of the civilian offender submitting a request.

(3) <u>Alleged Victim (military or civilian)</u>. The installation CRC must have unsubstantiated abuse in an incident the alleged victim was directly involved in. If the victim is a minor child, his or her non-offending parent or other responsible adult may submit a request for review.

(4) <u>Commanding Officer</u>. The commanding officer of the alleged offender or victim, or the commanding officer of the sponsor of the alleged offender or victim may request the local CRC reconsider its decision in an individual case.

d. Requests for review must be in writing, submitted within 30 days of receipt of the CRC's report, and based on one or more of the following grounds.

(1) <u>Newly discovered information</u>. The petitioner must demonstrate that:

(a) The information was discovered within 30 days of the date the petitioner was notified of the CRC's decision.

(b) The new information is not such that it would have been discovered by the petitioner at the time of CRC case disposition in the exercise of due diligence; and

(c) The newly discovered information, if considered by the installation CRC, would probably produce a substantially more favorable result for the petitioner.

(2) <u>Fraud on the installation CRC</u>. The petitioner must demonstrate that the fraud substantially influenced the CRC decision. Examples of fraud on the installation CRC which may warrant granting a request for review are:

(a) Confessed or proved perjury in statements or forgery of documentary evidence which substantially influenced the CRC decision.

(b) Willful concealment of information by one or more of the CRC members which was favorable to the alleged offender/victim and petitioner can demonstrate a substantial likelihood that knowledge of the information may have resulted in a different finding by the CRC.

(3) <u>Voting member was absent</u>. If a voting member was absent and such absence negatively impacted upon a finding that the abuse was or was not substantiated. For purposes of this section identified voting members are the judge advocate, a physician, psychologist, psychiatrist, or clinically mental health care provider, the line officer, and the FAR. The petitioner must affirmatively demonstrate a substantial likelihood that the voting member's presence may have changed the outcome of the installation CRC case disposition. CRC attendance by a designated representative of the absent voting member will negate HRT review on this ground.

(4) <u>Not guilty/guilty finding after a military or civilian full trial on the merits</u>. The alleged offender/victim must demonstrate that new or additional evidence was considered during the trial. The following limitations apply:

(a) The charge(s) decided upon during the trial on the merits must be directly related to the incident which formed the basis of substantiated/unsubstantiated abuse findings at the installation CRC case disposition, and;

(b) The petitioner demonstrates a substantial likelihood that the evidence in question, if considered by the installation CRC may have produced a substantially more favorable

3                    Enclosure (9)

result for the petitioner, or the evidence in question directly impacted upon the finding of not guilty/guilty.

(5) <u>The decision of the CRC was based upon plain legal or factual error</u>. An examination of the record establishes that the decision was based upon a plain error. An example of plain legal error is refusal to substantiate the allegations solely because the criminal statute of limitations has run. An example of plain factual error is the alleged offender was in confinement on the date the alleged assault took place at the victim's home.

3. <u>Format of request for review</u>

a. Requests must be made in writing, state the basis for the request for review, and made within 30 days of receipt of the report of the CRC's decision. Alleged offenders and victims may file a formal written request for review to either the installation CRC or the HRT. There is no requirement to request installation CRC reconsideration before forwarding a request to the HRT, however, the request shall be forwarded via the responsible commanding officer. The responsible commanding officer will request input from the CRC prior to forwarding the request to the HRT. The CRC will forward their input within 15 days of the commanding officer's request.

b. The CRC must reconsider any case within 30 days of receipt of the request. The FAR shall provide a final opinion to the requester, which follows the same format as the report of the CRC decision. If the requester then elects to file a request for review with the HRT, the FAR will forward the written report of the CRC decision, and copies of all documents relied upon to make that decision to the Bureau of Naval Personnel (BUPERS) (Pers-661) for disposition.

c. Regardless of any intent to request review, Central Registry submissions shall not be delayed pending review by the installation CRC or the HRT.

4. <u>Time limits</u>

a. <u>Installation CRC reconsideration</u>. A formal written request for reconsideration of the CRC determination must be filed within 30 days of receipt of the report of the CRC's decision. If the basis for the request is a not guilty/guilty finding, during a full trial on the merits, the request must be submitted within 30 days of the trial's conclusion. The CRC must consider the case within 30 days of receipt of the request for reconsideration.

Case 1:07-cv-00030    Document 22    Filed 02/28/2008    Page 14 of 32

b. <u>HRT review</u>. A formal written request for HRT to review the decision of a local CRC must be forwarded to BUPERS (Pers-661) within 30 days of receipt of the report of the CRC decision or within 30 days of receipt of the CRC's reconsideration decision. If the basis for the request is a not guilty/guilty finding, after a full trial on the merits, the request must be submitted within 30 days of the trial's conclusion. Time between a formal request for reconsideration by the installation CRC and the CRC's decision on such a request will not be counted for the purposes of this period. The HRT must review the case within 30 days of receipt of all available information.

5. <u>Headquarters Review Team (HRT) Procedures</u>. The composition of the HRT is similar to the installation CRC (see enclosure (8)). The purpose of HRT review will be to ensure that the CRC considered all the available relevant facts/information and, in so doing, made the appropriate case determination or reconsideration. The HRT serves a dual function in that it may review cases it receives under this enclosure, and it may provide clinical recommendations in cases involving allegations of child sexual abuse.

a. In cases where the grounds for review have not been met, or where the person who has filed the request does not meet the criteria in paragraph 2c, the HRT shall return the request to the petitioner via the cognizant unit commander without addressing the merits of the request. In such cases, the HRT will prepare an endorsement stating the reasons the request was returned.

b. The HRT shall make its decision based upon the record provided by the FAR, any information contained in the unit commander's endorsement, as well as any information provided by the petitioner. Requests which lack the required documentation shall be returned to the petitioner, via the cognizant unit commanding officer, without addressing the merits of the requests. In such cases, the HRT will prepare an endorsement stating the reasons the request was returned.

c. The HRT will prepare a written decision in each case. In cases where the HRT recommends the request be granted, the HRT's report shall cite the portion of the record which supports the decision. In cases where the request has been denied, the HRT's report shall state the reason the grounds for review were deemed to be insufficient. All recommendations shall be forwarded to Pers-6 for final decision after a review of the entire record. Final decisions by Pers-6 shall be sent to the petitioner via the endorsing unit or installation commanding officer. Copies of all such decisions shall also be provided to the installation CRC.

5                           Enclosure (9)

d. A majority or a consensus voting system will be utilized to determine whether to recommend that an request be granted. Abuse findings contained in the Navy Central Registry shall be amended immediately after a request has been granted by Pers-6.

e. The decision of Pers-6 on any request for reconsideration resolved on the merits shall be final.

## STATEMENT OF RIGHTS

1. The following persons may request review of the Case Review Committee's (CRC) determination to substantiate/unsubstantiate the allegations of abuse.

    a. <u>Alleged Military Offender</u> when the CRC has substantiated allegations of abuse by the alleged military offender.

    b. <u>Alleged Civilian Offender</u> when the installation CRC has substantiated abuse on the part of the civilian offender submitting a request.

    c. <u>Alleged Victim (military or civilian)</u> when the installation CRC has unsubstantiated abuse in an incident in which the alleged victim was directly involved. If the victim is a minor child, his or her non-offending parent or other responsible adult may submit a request for review.

    d. <u>Commanding Officer</u> of the alleged offender or victim, or the commanding officer of the sponsor of the alleged offender or victim may request the installation CRC reconsider its decision in an individual case.

2. If you are one of the individuals outlined above, you may submit a written request for review based on the presence of one or more of the following grounds for review.

    a. <u>Newly discovered information</u>. You must demonstrate that:

        (1) The information was discovered within 30 days of the date you were notified of the report of the CRC's decision.

        (2) The new information is not such that it would have been discovered by you at the time of CRC case disposition in the exercise of due diligence; and

        (3) The newly discovered information, if considered by the installation CRC, would probably produce a substantially more favorable result for you.

    b. <u>Fraud on the installation CRC</u>. You must demonstrate that the fraud substantially influenced the CRC. Examples of fraud on the installation CRC which may warrant granting of review are:

        (1) Confessed or proved perjury in statements or forgery of documentary evidence which substantially influenced the CRC.

Enclosure (9)

(2) Willful concealment of information by one or more of the CRC members, which was favorable to the alleged offender/victim and you can demonstrate a substantial likelihood that knowledge of the information may have resulted in a different finding by the CRC.

c. <u>Voting member was absent</u>. If a voting member was absent and such absence negatively impacted upon a finding that the abuse was or was not substantiated. Identified voting members are the judge advocate, the physician, the psychologist, psychiatrist or clinically privileged mental health care provider, the line officer, and the FAR. You must demonstrate a substantial likelihood that the voting member's presence may have changed the outcome of the installation CRC case disposition. CRC attendance by a designated representative of the absent voting member will negate review on this ground.

d. <u>Not guilty/guilty finding after a full trial on the merits</u>. You must demonstrate that new or additional evidence was considered during the trial. The following limitations apply:

(1) The charge(s) decided upon during the trial on the merits must be directly related to the incident which formed the basis of substantiated/unsubstantiated abuse findings at the installation CRC case disposition, and;

(2) You demonstrate a substantial likelihood that the evidence in question, if considered by the installation CRC, may have produced a substantially more favorable result for alleged offender/victim, or the evidence directly impacted upon the finding of not guilty/guilty.

e. <u>The decision of the CRC was based on plain legal or factual error</u>. A review of the record establishes that the decision was based on plain error. An example of plain legal error is refusal to substantiate the allegations because the criminal statute of limitations has run. An example of plain factual error is that alleged offender was in confinement on the date the alleged assault took place at the victim's home.

3. You may submit a written request for review via your commanding officer or your sponsor's commanding officer to either the installation CRC or the Bureau of Naval Personnel (BUPERS) (Pers-6), Navy Annex, Washington, DC 20370-5000. Your request must be made within 30 days from today. If your request is denied by the CRC, you have an additional 30 days from receipt of the CRC reconsideration to request review by BUPERS (Pers-6).

Enclosure (9)                    8

However, requests for review will not be granted unless you are one of the individuals listed in paragraph 1 above, and your request is based upon one of the grounds set forth in paragraph 2.

I have read and understand the rights above.

I do/do not elect to request reconsideration by the CRC of their decision to substantiate/unsubstantiate the allegations in my case.

I do/do not elect to request review of the CRC decision by the Headquarters Review Team.

_____          _____
COMMAND REPRESENTATIVE                     ALLEGED OFFENDER/VICTIM

                                           _____
                                           DATE OF RECEIPT BY ALLEGED
                                           OFFENDER OR VICTIM, OR COMMAND

Copy to:
FAR
CRC

9                                          Enclosure (9)

## GUIDANCE FOR MAINTENANCE OF FAP RECORDS

1. Family Advocacy Program (FAP) records are covered by the Privacy Act and are listed under the N06320-2 systems notice (see appendix A to this enclosure). All FAP records must be maintained in accordance with this systems notice, i.e., they must be maintained in various filing equipment in specified monitored or controlled access rooms or areas. Public access is not permitted. Records are accessible only to authorized personnel who are properly screened and trained, and on a need-to-know basis. Some examples of authorized routine users who have a need-to-know are: the member's commanding officer; the command legal officer; the recorder in an administrative separation board; and Naval Criminal Investigative Service (NCIS) investigators.

2. Generally if the record is retrievable by the individual's name or personal identifier, and that individual makes a request for his or her own record, a copy of the entire record should be provided to the individual, unless one of the exemptions included in the attached appendix applies. Requests for NCIS reports will be forwarded to Department of the Navy, Headquarters, Naval Criminal Investigative Service (Code 00JF), Washington Navy Yard, Building 111, 901 M Street SE, Washington, DC 20388-5380, for release. Placing copies of NCIS reports or law enforcement reports in the FAP record is strictly prohibited.

3. If the command wants to deny release of the FAP record in whole or in part, the request with a copy of the record along with an explanation as to why the record should be denied should be forwarded to the General Court-Martial Convening Authority who is an Initial Denial Authority, or to Chief, Bureau of Medicine and Surgery, Medico-Legal Affairs, Code 00L, 2300 E Street NW, Washington, DC 20372-5000, or Bureau of Naval Personnel (Pers-661), 2 Navy Annex, Washington, DC 20370-6610, as appropriate.

4. All other requests by third parties, (e.g., anyone whose personnel identifier or name is not used to retrieve the FAP

Enclosure (10)

file) should be handled in accordance with the Freedom of
Information Act (reference (1)).  Prior to any release of a FAP
record, the FAP counselor should consult with the installation
staff judge advocate or the nearest Naval Legal Service Office.

Enclosure (10)

2

N06320-2

**System name:**
Family Advocacy Program System
**System location:**
Case files: Family Service Center, Family Advocacy Center,
and/or Medical Treatment Facilities at the local naval activity
that services the local beneficiaries. Official mailing
addresses for naval activities are published as an appendix to
the Navy's compilation of systems of records' notices.
Central Registry: Commanding Officer, Naval Medical Management
Information Center, 8901 Wisconsin Avenue, Bethesda, MD 20889-
5066.
Centralized Child Sexual Abuse Case files: Chief of Naval
Personnel (Pers-661), 2 Navy Annex, Washington, DC 20370-6610.
**Categories of individuals covered by the system:**
All beneficiaries entitled to care at Navy medical and dental
facilities whose abuse or neglect is brought to the attention of
appropriate authorities, and all beneficiaries reported for
abusing or neglecting such victims.
**Categories of records in the system:**
The Central Registry consists of information extracted from DD
Form 2486, entitled Child/Spouse Abuse Incident Report.
Individual case files are maintained on the victim and alleged
offender who qualify as beneficiaries.
Victim's file: consists of in-take data, photographs, audio
tapes, risk assessment, case notes, committee. reports,
correspondence and other supporting data assembled relevant to
abuse or neglect and generated by the Family Advocacy Program
staff that are specific to the victim.
Offender's file: consists of in-take data, photographs, audio
tapes, risk assessment, case notes, committee reports,
correspondence and other supporting data assembled relevant to
abuse or neglect and generated by the Family Advocacy Program
staff that are specific to the offender.
Other non-permanent records generated outside of the Family
Advocacy Program (i.e., NCIS investigative reports, local police

Appendix A to
Enclosure (10)

3

reports, base security incident complaint reports, psychiatric
and substance abuse evaluations, treatment reports, copies of
pertinent medical record entries, child protective services
reports, shelter reports, etc.), are maintained in a separate
folder.  The documents are retrieved by case number only.

**Authority for maintenance of the system:**

5 U.S.C. 301, Departmental Regulations; E.O. 9397; DOD Directives
6400.1, 6400.1-M, 6400.2; SECNAVINST 1752.3; OPNAVINST 1752.2;
and NAVMEDCOMINST 6320.22.

**Purpose(s):**

To collect information pertaining to the identification,
prevention, evaluation, intervention, treatment and
rehabilitation of beneficiaries involved in abuse or neglect.
To notify and provide pertinent information to DOD and DON
officials responsible for intervening in abuse and/or neglect
incidents.

To provide headquarters centralized case management of child
sexual abuse incidents.

**Routine uses of records maintained in the system, including
categories of users and the purposes of such uses:**

In addition to those disclosures generally permitted under
5 U.S.C. 552a(b) of the Privacy Act, these records or information
contained therein may specifically be disclosed outside the DoD
as a routine use pursuant to 5 U.S.C. 552a(b)(3) as follows:
To the Executive Branch of government in the performance of their
official duties relating to the coordination of family advocacy
programs, medical care, and research concerning family member
abuse or neglect.

To federal, state or local government agencies when it is deemed
appropriate to utilize civilian resources in the counseling and
treatment of individuals or families involved in abuse or neglect
or when it is deemed appropriate or necessary to refer a case to
civilian authorities for civil or criminal law enforcement.
To authorized officials and employees of the National Academy of
Sciences, and private and public organizations and individuals
for authorized health research in the interest of the federal

Appendix A to
Enclosure (10)

4

government and the public. When not considered mandatory, patient identification data shall be eliminated from records used for research studies.

To officials and employees of federal, state, and local governments and agencies when required by law and/or regulation in furtherance of local communicable disease control, family abuse prevention programs, preventive medicine and safety programs, and other public health and welfare programs.

To officials and employees of local and state governments and agencies in the performance of their official duties relating to professional certification, licensing, and accreditation of health care providers.

To law enforcement officials to protect the life and welfare of third parties. This release will be limited to necessary information. Consultation with the hospital or regional judge advocate is advised.

The `Blanket Routine Uses' that appear at the beginning of the Navy's compilation of systems notices also apply to this system. Note: Records of identity, diagnosis, prognosis or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated or directly or indirectly assisted by any department or agency of the United States shall, except as provided in 42 U.S.C. 290dd-2(e), be confidential and be disclosed only for the purposes and under the circumstances expressly authorized in 42 U.S.C. 290dd-2(b). These statutes take precedence over the Privacy Act of 1974 in regard to accessibility of such records except to the individual to whom the record pertains. The `Blanket Routine Uses' do not apply to these types of records.

**Policies and practices for storing, retrieving, accessing, retaining, and disposing of records in the system:**
**Storage:**
Records may be stored in file folders, microfilm, magnetic tape, machine lists, discs, and other computerized or machine readable media.

Appendix A to
Enclosure (10)

5

**Retrievability:**
Victim's file is retrieved by name of victim, case number, their
Social Security Number, and/or year of incident.
Alleged offenders' file are retrieved by alleged offenders' name,
case number, their Social Security Number and/or year of
incident.
Central registry data is retrieved by any identifying data
element on the DD Form 2486.

**Safeguards:**
These files are highly sensitive and must be protected from
unauthorized disclosure. While records may be maintained in
various kinds of filing equipment, specific emphasis is given to
ensuring that the equipment areas are monitored or have
controlled access. Records are accessible only to authorized
personnel who are properly screened and trained and/or have a
need-to-know consistent with the purpose for which the
information was collected.
Information maintained on a computer requires password
protection. Computer terminals are located in supervised areas
with access controlled system.
Family Advocacy Program Staff will ensure that the in-take
assessment and clinical notes are not duplicated and placed in
both the victim and alleged offender's files.

**Retention and disposal:**
Family Advocacy Program case records are maintained at the
activity 4 years after the last entry in the file. If there is
no subsequent activity 4 years after closure, the records are
transferred to the National Personnel Records Center, 9600 Page
Boulevard, St. Louis, MO 63132-5100, where they are retained for
50 years and then destroyed.
Central Registry data base is retained permanently at the Naval
Medical Information Management Center. Paper copies are
maintained for 3 years and then destroyed.

**System manager(s) and address:**
Central Registry: Chief, Bureau of Medicine and Surgery, 2300 E
Street, NW, Washington, DC 20372-5120.
Program Manager for Child Sexual Abuse Files: Chief of Naval
Personnel (Pers-661), 2 Navy Annex, Washington, DC 20370-6610.

Appendix A to
Enclosure (10)

Case 1:07-cv-00030    Document 22    Filed 02/28/2008    Page 25 of 32

Case Files: Commanding officers of installations with Family
Service Centers, Medical Treatment Facilities, or Family Advocacy
Centers at naval activities. Official mailing addresses are
published as an appendix to the Navy's compilation of systems of
records notices.

**Notification procedure:**
Individuals seeking to determine whether this system of records
contains information about themselves should address written
inquiries to the commanding officer of the naval activity from
which they received treatment. Official mailing addresses are
published as an appendix to the Navy's compilation of systems of
records.
    Request should contain the full name, Social Security Number of
the individual, and/or year of the incident.
Individuals seeking to determine whether this system of records
contains information in the Central Registry about themselves
should address written inquiries to the Chief, Bureau of Medicine
and Surgery, 2300 E Street, NW, Washington, DC 20372-5120.
Requests should contain the full name and Social Security Number
of the individual.
Individuals seeking to determine whether this system of records
contains information in the centralized Child Sexual Abuse files
about themselves should address written inquiries to the Chief of
Naval Personnel (Pers-661) 2 Navy Annex, Washington, DC 20370-
6610.
Requests should contain the full name and Social Security Number
of the individual.

**Record access procedures:**
Individuals seeking to access records about themselves in the
case files should address written inquiries to the commanding
officer of the naval activity from which they received treatment.
 Official mailing addresses are published as an appendix to the
Navy's compilation of systems of records.
    Request should contain the full name, Social Security Number of
the individual and/or year of the incident.
Individuals seeking to access records about themselves that are
contained in the Central Registry about themselves should address

Appendix A to
Enclosure (10)

7

written inquiries to the Chief, Bureau of Medicine and Surgery, 2300 E Street, NW, Washington, DC 20372-5120.
Requests should contain the full name and Social Security Number of the individual.
Individuals seeking to access records about themselves contained in the centralized Child Sexual Abuse files about themselves should address written inquiries to the Chief of Naval Personnel (Pers-661) 2 Navy Annex, Washington, DC 20370-6610.
Requests should contain the full name and Social Security Number of the individual.

**Contesting record procedures:**

The Navy's rules for accessing records, and for contesting contents and appealing initial agency determinations are published in Secretary of the Navy Instruction 5211.5; 32 CFR part 701; or may be obtained from the system manager.

**Record source categories:**

Victim; offender; medical and dental records; educational institutions; medical institutions; private practitioners; law enforcement agencies; public and private health and welfare agencies; and witnesses.

**Exemptions claimed for the system:**

Part of this system may be exempt under 5 U.S.C. 552a(k)(2) and (k)(5), as applicable.
An exemption rule for this system has been promulgated in accordance with requirements of 5 U.S.C. 553(b)(1), (2), and (3), (c) and (e) and published in 32 CFR part 701, subpart G. For additional information contact the system manager.

Appendix A to
Enclosure (10)

Case 1:07-cv-00030   Document 22   Filed 02/28/2008   Page 27 of 32

## E1. ENCLOSURE 1

### DEFINITIONS

E1.1.1. Case Review Committee (CRC). A multidisciplinary team of designated individuals working at the installation level, tasked with the evaluation and determination of abuse and/or neglect cases and the development and coordination of treatment and disposition recommendations.

E1.1.2. Case Status. The status of the case at the time of the report. Includes "substantiated," "suspected," or "unsubstantiated," as follows:

E1.1.2.1. Substantiated. A case that has been investigated and the preponderance of available information indicates that abuse has occurred. The information that supports the occurrence of abuse is of greater weight or more convincing than the information indicating that abuse did not occur.

E1.1.2.2. Suspected. A case determination is pending further investigation. Duration for a case to be "suspected" and under investigation should not exceed 12 weeks.

E1.1.2.3. Unsubstantiated. An alleged case that has been investigated and the available information is insufficient to support the claim that child abuse and/or neglect or spouse abuse did occur. The family needs no family advocacy services.

E1.1.3. Child Abuse and/or Neglect. Includes physical injury, sexual maltreatment, emotional maltreatment, deprivation of necessities, or combinations for a child by an individual responsible for the child's welfare under circumstances indicating that the child's welfare is harmed or threatened. The term encompasses both acts and omissions on the part of a responsible person. A "child" is a person under 18 years of age for whom a parent, guardian, foster parent, caretaker, employee of a residential facility, or any staff person providing out-of-home care is legally responsible. The term "child" means a natural child, adopted child, stepchild, foster child, or ward. The term also includes an individual of any age who is incapable for self-support because of a mental or physical incapacity and for whom treatment in a medical treatment facility (MTF) is authorized.

E1.1.4. Family Advocacy Program (FAP). A program designed to address prevention, identification, evaluation, treatment, rehabilitation, follow-up, and reporting of family violence. FAPs consist of coordinated efforts designed to prevent and intervene in cases of family distress, and to promote healthy family life.



6

ENCLOSURE 1

E1.1.5. <u>FAP Manager</u>. An individual designated by the Secretary of the Military Department to manage, monitor, and coordinate the FAP at the headquarters level.

E1.1.6. <u>FAP Officer</u>. A designated officer who manages, monitors, and provides staff supervision of the FAP at the local level.

E1.1.7. <u>Spouse Abuse</u>. Includes assault, battery, threat to injure or kill, other act of force or violence, or emotional maltreatment inflicted on a partner in a lawful marriage when one of the partners is a military member or is employed by the Department of Defense and is eligible for treatment in an MTF. A spouse under 18 years of age shall be treated in this category.

7                                                ENCLOSURE 1

(2) <u>Unsubstantiated, Unresolved</u>. A case is ruled unsubstantiated, unresolved, that has been investigated and the available information is insufficient to support the allegation of abuse and/or neglect. Referral to family support services may occur.

c. <u>Suspected</u>. A case determination is pending further investigation. Duration for a case to be "suspected" and under investigation should not exceed 60 days from the first report of abuse or neglect.

5. <u>Central Registry</u>. A central management information system maintained by the Navy for identifying and recording information on child and spouse abuse incidents. The Central Registry receives all DD 2486s which are retained for 3 years after data entry. The Central Registry is an aid for screening applicants for family daycare providers and child care providers.

6. <u>Child</u>. The term "child" shall include the natural (birth) child, adopted (legally finalized) child, stepchild, foster child, or ward who is a dependent of a military member and is under the age of 18. The terms shall include an individual of any age who is incapable of self-support because of mental or physical incapacity and for whom treatment in a military medical treatment facility (MTF) has been authorized.

7. <u>Child Abuse/Neglect</u>. The physical injury, sexual abuse, emotional abuse, deprivation of necessities, or other abuse of a child by a parent, guardian, employee of a residential facility, or any person providing out-of-home care, who is responsible for the child's welfare, under circumstances that indicate the child's welfare is harmed or threatened. The term encompasses both acts and omissions on the part of such a responsible person. This term includes offenders whose relationship is outside the family and includes, but is not limited to, individuals known to the child and living or visiting in the same residence who are unrelated to the victim by blood or marriage, and individuals unknown to the victim. Specific types of abuse/neglect are:

a. <u>Physical abuse</u>. A type of abuse to include, but not limited to, acts resulting in: death, brain damage or skull fracture; subdural hemorrhage or hematoma; bone fracture; dislocation or sprain; internal injury; poisoning; burn or scald; severe cut or laceration; other physical injury that seriously impairs the health or physical well-being of the child victim; or other minor injury which includes minor bruises, or welts, or cuts, or twisting or shaking which do not constitute a substantial risk to the life or well-being of the victim.

Enclosure (1)                    2

GOVERNMENT
EXHIBIT
C

b. **Sexual abuse**. Actions including, but not limited to, the employment, use, inducement, enticement, or coercion of any child to engage in, or having a child assist any other person to engage in, any sexually explicit conduct (or any simulation of such conduct). This includes but is not limited to rape, molestation, prostitution, or other sexual activity between the offender or a third party and a child, when the offender is in a position of power over the child. Sexual abuse also includes exploitation to include forcing or allowing a child to look at the offender's genitals, forcing or allowing a child to observe an offender's or another's masturbatory activities, exposing of a child's genitals for sexual gratification of the offender(s), talking to a child in a sexually explicit manner, surreptitious viewing of a child while undressed for the offender's sexual gratification, or involving a child in sexual activity such as pornography or prostitution in which the offender does not have direct physical contact with the child.

c. **Emotional abuse**. Actions including, but not limited to, active, intentional berating, disparaging, or other behavior towards the victim that adversely affects the psychological well-being of the victim.

d. **Neglect**. Actions or omissions by a parent, guardian, or caretaker, which includes, but is not limited to, deliberate or negligent withholding or deprivation of necessities (nourishment, shelter, clothing, and health care), lack of adequate supervision, emotional or educational neglect, and abandonment. For more specific definitions see enclosure (2) of reference (c).

8. **Clergy-Penitent Relationship**. A person has the privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyperson or to a clergyperson's assistant, if such communication was made either as a formal action of religion or as a matter of conscience.

9. **Clinical Privileging**. The process whereby a health care practitioner is granted the permission and responsibility to independently provide specific medical or dental care within the scope of his or her license, certification, or registration. Clinical privileges define the scope and limits of practice for individual practitioners.

10. **Extra-familial Child Abuse**. Includes child abuse by strangers, persons in **loco parentis**, and child-to-child abuse.

11. **Family Advocacy Committee (FAC)**. The policy-making, coordinating, recommending, and overseeing body for the

3                      Enclosure (1)

installation FAP. Generally includes representatives from victim/witness services, family support programs, medical, law enforcement, legal, chaplains, youth and child services, shelters, installation and tenant commands.

12. **Family Advocacy Officer (FAO)**. A designated official who is responsible for administrative management and implementation of the installation FAP. The installation FAO shall facilitate the development, oversight, coordination, administration, and evaluation of the FAP in accordance with installation and service directives. The FAO shall be responsible for maintaining clear lines of authority and accountability in the FAP to ensure coordination of the FAP functions and the integration of services. This includes drafting installation instructions, coordinating Memoranda Of Understanding (MOUs) with civilian agencies, and ensuring there are written case protocols. A FAO does not decide clinical issues but might, for example, ensure that CRC's meet regularly. He or she does not become involved in case intervention plans.

13. **Family Advocacy Program (FAP)**. A program designed to address prevention, identification, evaluation, rehabilitation, education, and counseling, rehabilitation, followup, and reporting of family violence. FAPs consist of coordinated efforts designed to prevent and intervene in cases of family distress, and to promote healthy family life.

14. **Family Advocacy Program Regional Coordinator**. An individual who provides technical and clinical oversight to FAP-related programs at both medical treatment facilities (MTF) and FSCs; provides consultation and assistance to local FAOs and FARs, and installation and MTF commanding officers. Regional coordinators monitor the expenditure of FAP funds for their region; develop and coordinate regional staffing plans in concert with their Echelon 2 Commander; submit, via their Echelon 2 Commander, regional funding requests to the Bureau of Naval Personnel (BUPERS); and develop/coordinate model program proposals. The regional coordinator ensures effective coordination, cooperation and collaboration between medical and line agencies as well as other command and community partners in their regional area. The regional coordinators work with local installation personnel to develop strategies to support and strengthen the FAP as a leadership issue and a line-managed program. Regional managers are frequently tasked to represent their area and assist in development of Navy-wide FAP policy, programs and special projects. They report to the regional coordinator, who in turn reports to the appropriate Echelon 2 Commander.

Enclosure (1)                                4