1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

DAVID G. MATTHEWS,

        Plaintiff,

vs.

UNITED STATES OF AMERICA,

        Defendant.

CIVIL CASE NO. 07-00030

**OPINION AND ORDER RE: DISQUALIFICATION OF ATTORNEY DAVID HOPKINS**

      The Plaintiff David G. Matthews ("the Plaintiff"), proceeding *pro se*, filed Motion for Injunctive Relief on December 28, 2009, requesting this court to issue a preliminary and permanent injunction to prohibit Attorney David Hopkins ("Hopkins") from participating in this case. *See* Docket No. 97. The Government treated the motion as a motion to disqualify Hopkins. *See* Docket No. 101. The Plaintiff timely filed his reply on January 20, 2010. *See* Docket No. 106. The court held a hearing on the motion on February 3, 2010. At the hearing, the court stated that the Plaintiff's motion, although styled as a request for injunctive relief should actually be styled as a motion to disqualify Hopkins. After hearing the testimony, and reviewing the pleadings and case authority, the court ruled from the bench and denied the request to disqualify Hopkins.[1]

---

[1] This written Opinion and Order memorializes the court's oral ruling. In light of the court's ruling, the Plaintiff's Motion for a Temporary Restraining Order and Motion to Shorten

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff filed a Complaint against the United States on November 9, 2007, alleging intentional infliction of emotional distress and invasion of privacy under the Federal Tort Claims Act.  *See* Docket No. 1.

Before he filed the complaint *pro se*, the Plaintiff was told by a friend to contact Attorney David Hopkins, who was working in private practice with the law firm of Cabot Mantanona LLP.  *See* Docket Nos. 101 and 106.  According to the Plaintiff's friend, Hopkins was a Navy reservist and an attorney who could help the Plaintiff.  *See* Docket No. 106.  On September 25, 2006, the Plaintiff called Hopkins, and their  conversation lasted about 13 minutes (according to the Plaintiff) or from 10 to 15 minutes (according to Hopkins). *See* Docket Nos. 97 and 101.

According to the Plaintiff, during the phone call he solicited the legal services of Hopkins to represent him in his administrative claim and possible lawsuit against the United States.  *See* Docket No. 97.  The Plaintiff states that at the end of the phone call, he "believed Mr. Hopkins was interested in taking the case and that they had established an attorney-client relationship, based on the detailed, sensitive nature of their discussions."  Docket No. 97.  He acknowledges that Hopkins "had to ensure his representation of the plaintiff would not create a conflict of interest, as Hopkins was also an attorney in the Navy reserves."  Docket No. 97.  The Plaintiff asserts that he was "confident" Hopkins would take his case, and thus contacted Hopkins's law firm "no less than five times from October 2-10, 2006, in an attempt to speak with Mr. Hopkins."  Docket No. 97.  When these phone calls were never returned, the Plaintiff states he "concluded Mr. Hopkins could not represent him due to his duties with the U.S. Navy."  Docket No. 97.

Hopkins, however, gives a different account of the September 25, 2006 phone conversation.  In a Certification of No Representation, Hopkins states:

///

Time are deemed to be moot.  *See* Docket Nos. 109 and 110.

6.      At the outset of the discussion, I informed Mr. Matthews that I could neither represent nor provide legal advice to him because I was an officer and attorney in the Navy's Judge Advocate General's Corps.

7.      Mr. Matthews insisted that he describe his circumstances to me, and proceeded to do so during the next five to ten (5-10) minutes.

8.      All of the facts that Mr. Matthews described to me are now public record because they are alleged in the complaint and amended complaint previously filed herein.

. . . .

11.     I do not recall Mr. Matthews discussing any legal strategy, aside from mentioning, generally and without specificity, various options that were available to him; I did not recommend any option(s) over any other(s) or offer any opinion whatsoever.

. . .

13.     At the conclusion of our telephone conference, which lasted approximately ten to five (10-15) minutes from beginning to end, I persisted and repeated my previously stated position that I could neither represent nor provide legal advice to Mr. Matthews because I was an officer and attorney in the Navy's Judge Advocate General's Corps.

Docket No. 101.  Hopkins further states that the September 25, 2006 phone call included a description of all the circumstances alleged in the complaint and amended complaint.  *See* Docket No. 101.  He further states that there are more facts alleged in the complaint and amended complaint than were described to him by the Plaintiff during the call.  *See* Docket No. 101.

The Plaintiff eventually filed a Complaint, *pro se*, on November 9, 2007.  *See* Docket No. 1.  He filed an Amended Complaint on April 18, 2008.[2]  *See* Docket No. 25.  The case proceeded through discovery, and on December 10, 2009, the Plaintiff received the Defendant's response to his second request for production of documents.  At that time, he learned that Hopkins was working as assistant general counsel for the Commander, Navy Region Marianas.  *See* Docket No. 97.  Hopkins became an Assistant General Counsel in August 2009 and began

---

[2]  At the time the Amended Complaint was filed, the Plaintiff was represented by Attorney Lewis Littlepage.  He has since been discharged from the case.  *See* Docket No. 47.

1  assisting the Navy in its defense of the case. *See* Docket No. 101. The Plaintiff then filed the

2  instant Motion for Injunctive Relief, arguing that Hopkins should be enjoined from any

3  involvement in the case because his "discussions with Mr. Hopkins fulfill the general

4  requirements of attorney-client privilege." Docket No. 97. The Government argues that the

5  motion should be denied, because it was unreasonable for the Plaintiff to expect that Hopkins

6  was willing to represent him, and any information disclosed by the Plaintiff to Hopkins is not

7  significantly harmful to Plaintiff's case and does not prejudice the Plaintiff. *See* Docket No.

8  101.

9       At the February 3, 2010 hearing on the motion, the Plaintiff testified as to his

10  recollection of the September 25, 2006 phone call, which was the only time he spoke to

11  Hopkins. In his five subsequent calls to the law office where Hopkins worked, the Plaintiff

12  spoke only to staff members. The Plaintiff stated that he and Hopkins "interacted" and had a

13  "substantive" discussion during their phone call. He stated also that he could not recall any

14  specific communication to Hopkins that was privileged, and acknowledged that he could not go

15  into detail about what was discussed.

16       Hopkins then testified as to his recollection of what was said during the phone call. He

17  testified that during the first three or four minutes of the call, he informed the Plaintiff that he

18  would not be able to advise or represent him because he is a Navy JAG Corps Reservist and

19  there was a likelihood that the action would be adverse to the Navy. The Plaintiff "insisted" on

20  describing what the Navy had done to him, but the Plaintiff did not describe any acts or

21  omissions by the Plaintiff or his wife. During the hearing, the Plaintiff questioned Hopkins

22  extensively about a specific Navy regulation that permitted a Navy service member in the

23  private practice of law to represent interests adverse to the Navy. Hopkins acknowledged that

24  one time in private practice, he represented a service member in litigation adverse to the Navy,

25  but since then it has been his personal practice and policy not to undertake representation when

26  interests may be adverse to the military. The court, after hearing the testimony, reviewing the

27  filings and exhibits, upon consideration of case authority, ruled from the bench and denied the

28  disqualification of Hopkins.

1  **II.   ANALYSIS**

2       At the outset, the court recognizes that, although styled as a Motion for Injunctive

3  Relief, the relief sought by the Plaintiff is the disqualification of Hopkins from participating in

4  the case.  In fact, the substance of  the Government's response to the Plaintiff's motion

5  addresses the issue of Hopkins's disqualification. Therefore, the court will treat this proceeding

6  as if it were ruling on a motion to disqualify, rather than a request for injunctive relief.

7       **A.   Motion for Disqualification**

8       The Plaintiff "claims an attorney client privilege as a prospective client," arguing the

9  September 25, 2006 phone call with Hopkins requires Hopkins's disqualification.  Docket No.

10  106.  The court is cognizant that "[b]ecause of th[e] potential for abuse, disqualification motions

11  should be subjected to 'particularly strict judicial scrutiny.'"  *Shurance v. Planning Control*

12  *Int'l Inc.*, 839 F.2d 1347, 1349 (9th Cir.  1988) (quoting *Optyl Eyewear Fashion Int'l Corp. v.*

13  *Syle Cos. Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)).

14       To decide whether Hopkins should be disqualified, the court must examine whether

15  there is a privileged relationship between the Plaintiff and Hopkins.  The Ninth Circuit has

16  adopted the following eight-part test to determine the existence of the attorney-client privilege:

17       (1) When legal advice of any kind is sought (2) from a professional legal adviser
         in his or her capacity as such, (3) the communications relating to that purpose,
18       (4) made in confidence (5) by the client, (6) are, at the client's instance,
         permanently protected (7) from disclosure by the client or by the legal adviser
19       (8) unless the protection be waived.

20  *United States v. Martin*, 278 F.3d 988, 999 (9th Cir.  2002) (citing 8 Wigmore, Evidence §

21  2292, at 554 (McNaughton rev. 1961)).  "[A] party asserting the attorney-client privilege has

22  the burden of establishing the relationship and the privileged nature of the communication."

23  *See United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quotation marks and citations

24  omitted).

25       **1.   Whether there is an attorney-client relationship**

26       To assert the attorney-client privilege, the Plaintiff "must show that he had an attorney-

27  client relationship" with Hopkins.  *See v. Martin*, 278 F.3d at 1000.  The first inquiry is whether

28  the Plaintiff has met his burden of establishing that there was an attorney-client relationship.

1    The Ninth Circuit has held that the attorney-client privilege "does not apply where the

2    lawyer has specifically stated that he would not represent the individual and in no way wanted

3    to be involved in the dispute." *Barton v. U.S. Dist. Court*, 410 F.3d 1104, 1111 (9th Cir. 2005).

4    Furthermore, the court is aware that the interpretation of the attorney-client privilege is guided

5    by federal common law, rather than state law.  *See United States v. Blackman*, 72 F.3d 1418,

6    1423-24 (9th Cir. 1995); *see also Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th

7    Cir. 1992) ("Issues concerning application of attorney-client privilege in the adjudication of

8    federal law are governed by federal common law.").

9        According to Hopkins, during the September 25, 2006 phone call, he twice informed the

10   Plaintiff that he was unable to advise or represent him.  At the hearing, Hopkins testified that he

11   was "unambiguous" in his explanation to the Plaintiff.  He allowed the Plaintiff to continue

12   talking, not only because the Plaintiff "insisted," but also "out of courtesy."  He testified that

13   they had not entered into a fee arrangement or executed a written retainer, and that he had not

14   performed any legal services for the Plaintiff.  The court is persuaded by the reasoning in

15   *Knigge ex rel. Corvese v. Corvese*, No. 01 CIV.5743 (DLC), 2001 WL 830669 (S.D.N.Y July

16   23, 2001), which involves the strikingly similar issue of whether "conversations" and one phone

17   message with a lawyer created an attorney-client relationship, such that the lawyer would be

18   disqualified from the case.

19       The court in *Knigge* recognized that the creation of an attorney client relationship was

20   dependent on "the client's reasonable belief that he is consulting a lawyer in that capacity and

21   his manifested intention to seek professional legal advice." *Id.* at *2 (quoting *Diversified

22   Group, Inc. v. Daugerdas*, 139 F.Supp.2d 445, 454 (S.D.N.Y. 2001)).  Courts should "look at

23   the words and conduct" in determining whether an attorney-client relationship was created. *See

24   id.* (quoting *Catizone v. Wolff*, 71 F.Supp.2d 365, 368 (S.D.N.Y. 1999)).

25       As stated during the hearing, the court finds parts of both Hopkins's and the Plaintiff's

26   testimony to be credible.  This court will look at the words and conduct of the Plaintiff and

27   Hopkins to determine whether the Plaintiff had a reasonable basis for his belief that an attorney-

28   client relationship was created.  The court finds that Plaintiff's statements about his case during

1   the phone call were unilateral.  In addition, the Plaintiff testified that he could not recall

2   absolutely what was specifically said during the phone call.  The court also finds that two times

3   during the phone call, Hopkins told the Plaintiff that he could not advise or represent the

4   Plaintiff, as it was Hopkins's personal policy and practice not to undertake representation that

5   might be adverse to the Navy.  Based upon the words and conduct of the Plaintiff and Hopkins,

6   the court does not believe that there was a reasonable basis for the Plaintiff to believe that an

7   attorney-client relationship had been created.  Looking at the totality of the circumstances, and

8   upon consideration of the parties' filings and testimony presented, the court finds that no

9   attorney-client relationship existed.

10              **2.      Whether the Plaintiff was a prospective client**

11          Furthermore, the Plaintiff relies heavily on Rule 1.18 of the Model Rules of Professional

12  Conduct, which relates to an attorney's duties relating to a prospective client.  This court holds

13  attorneys to the ethical rules adopted by the Guam Bar Association.  *See* Local Rule GR22.3(b)

14  ("Every attorney admitted to practice before this Court shall . . . comply with the standards of

15  professional conduct required of members of the Bar of Guam and contained the American Bar

16  Association Model Rules of Professional Conduct as adopted on August 2, 1983, and as

17  thereafter amended or judicially construed.").  The Guam Rules of Professional Conduct,

18  including Rule 1.18, were adopted by the Supreme Court of Guam on September 29, 2003.  *See*

19  Supreme Court  of Guam Promulgation Order No. 04-0002 (February 11, 2004).  However,

20  there has not been any ruling by the Supreme Court of Guam regarding Rule 1.18 to assist this

21  court's interpretation of the rule. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir.

22  2000) (holding that because state law applies determining disqualification matters, and federal

23  courts "must follow the reasoned view of the state supreme court when it has spoken on the

24  issue.").

25          Absent such guidance, this court looks to the Comments of the ABA Model Rules of

26  Professional Conduct.  Comment 2 states in relevant part:  "A person who communicates

27  information unilaterally to a lawyer, without reasonable expectation that the lawyer is willing to

28  discuss the possibility of forming a client-lawyer relationship, is not a 'prospective client'

1  within the meaning of paragraph (a)." Model Rule Prof. Conduct 1.18, Cmt 2. This comment is

2  appears to be precisely the situation before the court. Hopkins states that he twice told the

3  Plaintiff that he could not provide representation, but the Plaintiff "insisted that he describe his

4  circumstances to me." Docket No. 101. Moreover, Hopkins testified that he allowed the

5  Plaintiff to continue talking "out of courtesy." This case is an example of the Plaintiff

6  "communicat[ing] information unilaterally to a lawyer, without reasonable expectation that the

7  lawyer is willing to discuss the possibility of forming a client-lawyer relationship." Model Rule

8  Prof. Conduct 1.18, Cmt 2. The court finds that the Plaintiff cannot be considered a

9  "prospective client" and thus, is not owed any duty under Rule 1.18.

10  ### 3.  Whether there was privileged communication

11  The court next examines whether the Plaintiff has met his burden of proving there was a

12  privileged communication. *See Ruehle*, 583 F.3d at 607. The Ninth Circuit has stated that: "A

13  party claiming the privilege must identify specific communications and the grounds supporting

14  the privilege as to each piece of evidence over which privilege is asserted." *Martin*, 278 F.3d at

15  1000 (citation omitted).

16  It is undisputed that there was only one communication in this case – the September 25,

17  2006 phone call. In his motion, the Plaintiff asserts that their discussion was "detailed" and of a

18  "sensitive nature." Docket No. 97. However, he conceded at the hearing that he could not

19  recall any specific communication he made to Hopkins during the phone call that was

20  privileged. He also could not state with certainty whether all the statements he made to

21  Hopkins during the phone call were later contained in the Complaint and Amended Complaint

22  filed in this case. *See* Docket Nos. 1 and 25. The Plaintiff testified that they "probably

23  discussed" privileged information, but then admitted he could not say "absolutely" that there

24  was a privileged communication. According to Hopkins's account, however, there was no

25  personal discussion and the Plaintiff did not disclose any confidential information during the

26  phone call.

27  The court finds portions of the testimony of the Plaintiff and Hopkins to be credible.

28  But as the "party claiming the privilege," the Plaintiff has the burden of "identify[ing] specific

1  communications and the grounds supporting the privilege as to each piece of evidence over

2  which privilege is asserted." *Martin*, 278 F.3d at 1000. By his own testimony, the Plaintiff has

3  not met this burden. The court finds that there was no exchange of confidential privileged

4  information.

5      As instructed by the Ninth Circuit, the court has applied "particularly strict judicial

6  scrutiny" in its examination of the Plaintiff's request dto disqualify Hopkins. *Shurance*, 839

7  F.2d at 1349. Upon review of the pleadings, the testimony and exhibits, and the relevant case

8  authority, the court finds that the Plaintiff has not met his burden proving an attorney-client

9  privilege exists. Accordingly, the motion to disqualify Hopkins is **DENIED**.

10 **III.    CONCLUSION**

11     As discussed above, the court finds there was no attorney-client relationship created

12 between the Plaintiff and Hopkins, and that there was no exchange of confidential privileged

13 information. Accordingly, the court **HEREBY DENIES** the Plaintiff's request to disqualify

14 Hopkins.

15     **SO ORDERED.**

16

17       **/s/ Frances M. Tydingco-Gatewood**

18                        **Chief Judge**
                         **Dated: Feb 09, 2010**

19

20

21

22

23

24

25

26

27

28