DISTRICT COURT OF GUAM

| | |
|---|---|
| DAVID G. MATTHEWS,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Case No. 07-00030<br><br>**OPINION AND ORDER RE: MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

1     This matter came before the court on July 27, 2011, on Defendant United States of
2 America's Motion to Dismiss for Lack of Subject Matter Jurisdiction. See Docket No. 195.
3 After hearing oral argument, reviewing the record, the parties' submissions, as well as relevant
4 statutes and authority, the court hereby **GRANTS** the motion to dismiss and issues the following
5 decision.[1]

6 **I.    FACTUAL AND PROCEDURAL BACKGROUND**

7     The Plaintiff David Matthews ("the Plaintiff") filed a *pro se* Complaint against the
8 Defendant United States of America ("the Government") on November 9, 2007, alleging
9 invasion of privacy and infliction of emotional distress under the Federal Tort Claims Act
10 ("FTCA"). See Docket No. 1. He filed an amended complaint through counsel on April 18,

---

[1] The court recognizes the Plaintiff proceeded *pro se* for the majority of these proceedings; he has ably represented himself during this litigation, and specifically, during the hearing on this motion. Likewise, the court recognizes the performance of the Government attorney in arguing the motion.

2008, alleging: Invasion of Privacy, False Light Invasion of Privacy and Intentional and Negligent Infliction of Emotional Distress.[2] *See* Docket No. 25.

The claims arose from an incident of alleged child abuse that occurred on June 14, 2005, involving the Plaintiff's minor daughter, who was 12 years old at the time. *See* Docket No. 195. He generally challenges the procedure used by the U.S. Navy in response to this incident, and to the implementation of the Family Advocacy Program ("FAP"). *See id.*

The Government now seeks to dismiss the case, arguing that the court lacks jurisdiction because the implementation of the FAP constitutes a discretionary function of the Government, and thus, is an exception to waiver of sovereign immunity granted by the FTCA. *See id.* The Government also argues that the court lacks jurisdiction because Guam law shields social workers from liability while carrying out duties associated with prevention of child abuse, and that the Plaintiff's privacy act claims are tantamount to defamation claims and should be dismissed.

The Plaintiff, who is proceeding *pro se*, filed an opposition that primarily addresses the merits of his case against the Government. *See* Docket No. 206. He argues that the Government's functions in the case are mandatory and that the discretionary function exception does not apply.

## II. JURISDICTION AND VENUE

The Plaintiff has filed his case pursuant to the FTCA.[3] *See* 28 U.S.C. § 2671 *et seq.* and

---

[2] The Amended Complaint labels Count III as "Negligent Infliction of Emotional Distress"; however, this appears to be a typographical error. *See* Docket No. 25. Count III will be treated herein as a claim of Intentional Infliction of Emotional Distress.

[3] The Federal Tort Claims Act permits

civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the

David G. Matthews v. United States of America, Civil Case No. 07-00030
Opinion and Order re: Motion to Dismiss for Lack of Subject Matter Jurisdiction

28 U.S.C. § 1346(b). The United States enjoys sovereign immunity, and "cannot be sued without its consent." *United States v. Navajo Nation*, 556 U.S. 287, 129 S. Ct. 1547, 1551 (2009). However, the FTCA is a limited waiver of the federal government's defense of sovereign immunity, and allows suits against the United States by those injured by governmental activity, and allows suit for tort claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, the Plaintiff contends that he was injured as a result of his inclusion in the FAP and because the subsequent substantiation of child abuse allegations resulted in his being placed on the Navy-Marine Corps Central Registry. *See* Docket No. 25.

Venue is proper in this judicial district, the District of Guam, because the Plaintiff resides here, and because all of the events or omissions giving rise to Plaintiff's claims occurred here. *See* 28 U.S.C. § 1391.

### III.  DISCRETIONARY FUNCTION EXCEPTION

There are numerous statutory exceptions to the FTCA, and the discretionary function exception is the most frequently litigated. Codified at 28 U.S.C. § 2680(a),[4] the discretionary

---

claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

[4] 28 U.S.C. § 2680, states:

The provisions of this chapter and section 1346 (b) of this title shall not apply to—
   (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

function exception prohibits "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* If this exception applies, then jurisdiction is lacking and the case must be dismissed. *Richardson v. United States*, 943 F.2d 1107, 1114 (9th Cir. 1991) ("Because we find that the discretionary function exception applies, the United States has not consented to be sued in this case and we must affirm the district court's dismissal for lack of subject matter jurisdiction.").

The United States Supreme Court has recognized that the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals. " *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). The Court interpreted the exception as signifying that "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814.

**A.     Elements of the discretionary function exception**

The Supreme Court has articulated two elements for the discretionary function exception to apply. *See Berkovitz v. United States*, 486 U.S. 531 (1988) and *United States v. Gaubert*, 499 U.S. 315 (1991).

First, "the act[] must be discretionary in nature." *Gaubert*, 499 U.S. at 322. "In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Gaubert*,

499 U.S. at 322 (quoting *Berkovitz*, 486 U. S. at 536). Thus, if there is no judgment or choice, then the exception does not apply.

Second, if indeed there was a judgment or choice, "a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U. S. at 536. "[O]nly governmental actions and decisions based on considerations of public policy" fall within the discretionary function exception. *Id.* at 537. The Court in *Gaubert* further held that if "a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* This presumption has been criticized as creating an unfairly high hurdle for plaintiffs to overcome. *See* Mark C. Niles, *"Nothing But Mischief": The Federal Tort Claims Act and the Scope of Discretionary Immunity*, 54 Admin. L. Rev. 1275, 1229-30 (2002).

Despite the Court's articulation of the two-part test, the rulings of the Supreme Court, as well as the Ninth Circuit, reflect that the discretionary function exception applies to a wide variety of governmental actions.[5] "Courts have been reluctant to create formulaic categories . . .

---

[5] In the following cases, the Supreme Court found the United States to be immune from liability:

• for injuries when two ships carrying fertilizer caught fire and exploded in Texas City Harbor, damaging the city and killing several people. The federal government, which was overseeing the manufacture and shipment of the fertilizer to be sent to countries devastated by World War II, was sued for negligence after the explosion. *Dalehite v. United States*, 346 U.S. 15 (1953).
• for injuries to an infant who contracted polio from a vaccine that had been approved by the Food and Drug Administration. *Berkovitz v. United States*, 486 U.S. 531 (1988).
• when a savings and loan association failed because of poor "day to day" operational decisions made by federal regulators. *United States v. Gaubert*, 499 U.S. 315 (1991).

to illuminate which governmental decisions fall within the discretionary function exception." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008). Thus, there is no hard and fast rule to guide trial courts as to the factual scenarios wherein the discretionary function exception should – or should not – apply.

The governmental actions at issue in this case is the establishment and implementation of the FAP by the Department of the Navy to the allegation of child abuse regarding the Plaintiff's daughter. The FAP, which addresses procedures regarding handling allegations of child abuse and family domestic violence in the military, is discussed in detail below.

### B. The Family Advocacy Program

The Government argues that the court lacks jurisdiction in this case because the governmental actions challenged by the Plaintiff fall within the discretionary function exception. *See* Docket No. 195.

The Plaintiff, however, contends that the Government is complying with a mandatory directive to establish a program regarding child abuse, and thus, the exception does not apply. He also argues that the Government had non-discretionary duties and procedures which were not followed; specifically, that a Government employee failed to advise him of his Privacy Act rights before an interview.

To better understand the FAP, the court should examine how and why the FAP was created. The creation and development of the FAP is set forth in detail by the U.S. Navy-Marine

---

The Ninth Circuit has also found the exception applies to a wide variety of situations, including the suits resulting from:
- the death of a boater resulting from the Army Corps of Engineers' decision not to replace warning signs about a submerged dam. *Bailey v. United States*, 623 F.3d 855 (9th Cir. 2010).
- the death of a mountain climber caused by a rockslide at Yosemite National Park. *United States v. Terbush*, 516 F.3d 1125 (9th Cir. 2008).
- the injuries to a camper caused when a car ran over his tent at a federally-owned property managed by the Bureau of Land Management. *Reed v. United States*, 231 F.3d 501 (9th Cir. 2000).

Corps Court of Military Review in *United States v. Brown*, 40 M.J. 625 (N-M.C.M.R. 1994). In 1974, Congress has expressed its intent to address issues of child abuse by enacting the Child Abuse Prevention and Treatment Act. *See id.* at 632 (discussing Pub. L. 93-247, 88 Stat. 4 (1974) (codified as amended at 42 U.S.C. §§ 5101-5119c (1988 & Supp IV 1992))). This act, including the subsequent Military Child Care Act of 1989, leave no doubt as to Congress' stance on this issue. *See Brown*, 40 M.J. at 632.

In 1976, the Navy established the predecessor program to the FAP, known as the Child Advocacy Program. It was created "to protect abused children of military families," *id.* n.9, and was referred to as "essentially a creature of administrative regulation." *Id.* at 632. In 1979, the Navy designated the Child Advocacy Program as the Family Advocacy Program. *Id.* at 632-33. In 1981, the Department of Defense ("DoD") formally established the DoD Family Advocacy Program. *Id.* The DoD cited the Child Abuse Prevention and Treatment Act (as amended) as the basis for creating the DoD FAP. *Id.* According to DoD Directive 6400.1, the FAP "was intended to provide a coordinated DoD-wide Family Advocacy Program for the prevention, identification, evaluation, treatment and follow-up and reporting of child abuse." *Id.* at 633. The Secretary of Defense tasked the military departments with implementing the program. *Id.*

In addition to enacting legislation about child abuse, Congress was also concerned with issues of domestic violence. In 1993, Congress enacted legislation that again tasked the Secretary of Defense to promulgate regulations requiring prompt reporting of acts of domestic violence to family advocacy representatives and requiring family advocacy committees to review such situations and make a recommendation to the commander for action. *Id.* at 632 (citing the National Defense Authorization Act for Fiscal Year 1994, Pub.L. 103-160, § 551, 107 Stat. 1547, 1661 (1993)).[6]

---

[6] The legislation states:

    (a) Immediate Actions Required. - Under regulations prescribed pursuant to subsection (c), the Secretary concerned shall ensure, in any case of domestic

These statutes reflect Congress' concern with both child abuse and domestic violence issues in the armed forces. However, in enacting the legislation, Congress did not demand a specific course of action to be followed. Rather, duties were imposed upon the Secretary of Defense, who in turn, tasked the implementation to the military departments (Navy, Army, etc.). With regard to the case at bar, the Secretary of the Navy assigned the responsibility of establishing the program to the Chief of Naval Operations and the Commandant, United States Marine Corps. *Brown*, 40 M.J. at 633 n.10. The Navy's implementing directives were promulgated in 1984 and 1987, and are found at Chief of Naval Operations ("OPNAV") Instruction 1752. 2A ("the Instruction"). *See* Docket No. 208, Exh. A. The Instruction outlines the procedures to be followed when a report of family or child abuse is made. Notably, the Instruction expressly states that it "provides only internal guidance to protect and assist actual or alleged victims of child and spouse abuse. It is not intended to and does not create any rights, substantive or procedural, enforceable by law by any victim, witness, suspect, accused . . . ." *See*

---

violence in which a military law enforcement official at the scene determines that physical injury has been inflicted or a deadly weapon or dangerous instrument has been used, that military law enforcement officials-
      (1) take immediate measures to reduce the potential for further violence at the scene; and
      (2) within 24 hours of the incident, provide a report of the domestic violence to the appropriate commander and to a local military family advocacy representative exercising responsibility over the area in which the incident took place.
    (b) Family Advocacy Committee. - Under regulations prescribed pursuant to subsection (c), the Secretary concerned shall ensure that, whenever a report is provided to a commander under subsection (a)(2), a multidisciplinary family advocacy committee meets, with all due practicable speed, to review the situation and to make recommendations to the commander for appropriate action.
    (c) Regulations. - The Secretary of Defense, and the Secretary of Homeland Security with respect to the Coast Guard when it is not operating as a service in the Navy, shall prescribe by regulation the definition of "domestic violence" for purposes of this section and such other regulations as may be necessary for purposes of this section.

10 U.S.C. § 1058.

Docket No. 208, Exh. A (OPNAV Instr. 1752.2A.4c).

### C. Applying the discretionary function exception

As discussed above, to determine if a governmental action falls within the discretionary function exception, the court must consider: 1) whether the action involves elements of judgment or choice or if the federal statute, regulation or policy prescribed a specific course of action to be followed; and 2) if the judgment or choice was grounded in social, economic or political policy. *See Berkovitz*, 486 U.S. 531 and *Gaubert*, 499 U.S. 315. In applying this test, the court must separately analyze each challenged action. *In re Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995). In this case, the Plaintiff challenges the Navy's implementation of the FAP. Each element of the test will be applied to the facts of this case.

#### 1. Whether there was an element of discretion

First, the court must examine whether the action involved elements of choice or judgment. While the Government argues there was indeed discretion, the Plaintiff contends that the Government was acting pursuant to specific directives and had no discretion to act.

Both Congress and the Instruction itself mandate the creation and implementation of the FAP. Furthermore, the Instruction itself provides "internal guidance" as to the protection and assistance of victims. *See* Docket No. 208, Exh. A. However, upon close examination, the court finds that the precise operation of the FAP calls for the exercise of discretionary decisions by Government employees.

In fact, the Instruction itself includes guidance that demonstrate the exercise of discretion in the implementation of the FAP. The first example: "Upon discovery of allegations of child or spouse abuse, and <u>throughout the processing of FAP cases</u> and any associated disciplinary actions, <u>commands shall take reasonable steps</u> to ensure the safety of alleged victims and witnesses." *See* Docket No. 208, Exh. A (OPNAV Inst. 1752.2A.5e(1)) (emphasis added). Making a determination involving "reasonableness" inherently requires that members of the military command exercise their discretion. Further, the Instruction sets forth possible

"responsive actions" by Government employees, to include developing a safety plan for the victim, and issuing orders to bar people from Navy bases. *Id.* Nothing in the Instruction mandates that certain actions must be taken in response to the allegation of violence. Clearly, different situation would warrant different "responsive actions," and employees would need to make a choice as to the appropriateness of any "responsive actions."

A second example in the Instruction expressly states that: "Appropriate intervention options must be tailored to address each identified type of abuse for offenders, victims, and involved family members." *See* Docket No. 208, Exh. A (OPNAV Instr. 1753.2A.5e(4)(a)). Thus, Government employees are tasked with exercising discretion in order to tailor intervention options.

Yet another example in the Instruction provides: "All incidents of child and spouse abuse which result in the initiation of a FAP case will be reviewed by the local multi-disciplinary [Case Review Committee]." *See* Docket No. 208, Exh. A (OPNAV Inst. 1752.2A.5e(2)). The Case Review Committee ("CRC") is a multi-disciplinary panel including but not limited to, a physician, mental health care provider, officer not in the chain of command, and a judge advocate. As explained by the Government counsel during the hearing, the CRC is not a criminal tribunal; rather the members review the report of abuse and the investigation conducted, and reach a determination whether such report should be "substantiated" or "not substantiated." The ultimate determination of the CRC is the result of each committee member exercising his or her discretion; a different situation would warrant different determinations by the CRC. There is no military directive mandating how the CRC, or each committee member, must decide.

Finally, at the hearing on this motion, the Government attorney explained that the release of names from the Navy-Marine Corps Central Registry is within the control of the FAP. If a request is made regarding disclosure of a name on the list, the release of such name is subject to the discretion of the FAP.

The situation can be compared to the facts in *Bailey v. United States*, 623 F.3d 855 (9th

Cir. 2010), where the Government was sued because the Army Corps of Engineers ("Corps") had failed to replace missing warning signs regarding a submerged dam. 623 F.3d at 858. The Corps manual stated "that missing or damaged signs must be replaced or repaired in a timely manner." *Id.* at 861. The Ninth Circuit reasoned that:

> Although [the manual] does strip the Corps of its discretion *whether* to replace missing or damaged signs, it does not create a mandatory and specific directive regarding when the Corps must replace any missing or damaged signs. Rather, the determination of when to replace the signs is left to the discretion of the Corps.

*Id.* (footnote omitted). The facts herein also may be compared to *Miller v. United States*, 163 F.3d 591 (9th Cir. 1988), arising from property damage caused by a forest fire. *Id.* at 592. The Ninth Circuit concluded that although there were general firefighting guidelines for the U.S. Forest Service to follow, these guidelines did not eliminate discretion because they "did not tell the Forest Service to suppress the fire in a specific manner and within a specific period of time." *Id.* at 595.

In addition to his general objections to the FAP, the Plaintiff specifically points to the conduct of the FAP case manager, arguing that he violated a non-discretionary duty when he failed to advise the Plaintiff of his Privacy Act rights before conducting an interview. *See* Docket No. 25. During the hearing, the Government attorney acknowledged that the FAP case manager erred and was subsequently disciplined. He further argued that despite the employee's error, the discretionary function exception applies nonetheless.

The court agrees. The Ninth Circuit has held that with regard to the discretionary function exception: "Even if the decision is an abuse of the discretion granted, the exception will apply." *Terbush*, 516 F.3d at 1129; *see also Blakey v. U.S.S. Iowa*, 991 F.2d 148, 152 (4th Cir. 1993) (holding that the discretionary function exception "bars all claims based on discretionary acts regardless of whether the acts were performed negligently or represented an abuse of discretion."). Thus, even if the case manager abused his discretion, the discretionary function exception still applies.

It is undisputed that the Government was required to address concerns of child and family abuse and establish and implement the FAP pursuant to statutory mandate and military regulation. However, the operation of the FAP is subject to discretionary decisions. Accordingly, the court finds the first element is satisfied, and proceeds to the second element.

### 2. Whether the choice was susceptible to policy analysis

The court next examines whether the discretionary decision was subject to policy analysis. This is a more straightforward analysis in this case, because the Instruction itself specifies the policy considerations in establishing the FAP.

First is the economic and political policy of military readiness. "Spouse and child abuse has a negative effect upon military readiness, effectiveness, and good order and discipline." *See* Docket No. 208, Exh. A (OPNAV Inst. 1752.2A.4a). Second are the social policies set forth as the "five primary goals of the FAP" which are "prevention [of abuse]; victim safety and protection; offender accountability; rehabilitative education and counseling; and community accountability/responsibility for a consistent and appropriate response." *See* Docket No. 208, Exh. A (OPNAV Inst. 1752.2A.4b).

In light of the policy considerations found in the Instruction itself, the court finds that the decision was subject to policy analysis.

### 3. The discretionary function exception applies here

Upon applying both the elements, the court concludes that the Government has met its burden of proving the applicability of the discretionary function exception. *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011) ("[T]he government bears the ultimate burden of establishing that the exception applies."). In fact, the U.S. Navy-Marine Corps Court of Military Review held that the determination for services under the FAP is indeed a discretionary decision: "[A]ppellant's eligibility for the Family Advocacy Program was determined in accordance with departmental directives by . . . the officer having authority and responsibility for making that determination. We do not believe a discretionary, personnel decision of this nature is subject to

our judicial review . . . ." *United States v. Bledsoe*, 39 M.J. 691, 696 (N-M.C.M.R. 1993).

Because the discretionary function exception applies here, the court further finds that the Government has not waived sovereign immunity and is therefore immune from suit. Without such waiver, this court lacks subject matter jurisdiction, and must dismiss the case.

### D. Immunity Under Guam Law

Because federal courts apply state law tort law to FTCA claims, the Government also argues that the court lacks jurisdiction because the actions of the FAP case manager are protected under Guam's social worker immunity statute. "[T]here is no FTCA subject-matter jurisdiction unless the case involves a tort under state law. If there is no actionable duty under state law against a private person, there can be no tort claim against the United States." Paul F. Figley, *Understanding the Federal Tort Claims Act: A Different Metaphor*, 44 Tort Trial & Ins. Pratice L.J. 1105, 1114 (Spring/Summer 2009) (footnote omitted).

The Government contends that there is no FTCA liability for the actions of the Government and specifically, the FAP case manager, in implementing the FAP. The Government relies on 19 G.C.A. § 13206, which states in relevant part: "Any person . . . participating in good faith in the making of a report . . . arising out of an instance of suspected child abuse . . . shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions." Review of the plain words of this statute and the legislative history of this provision reveal that, in enacting this statute, the Guam Legislature was focused on the protection of children.[7]

The Plaintiff argues that statutory immunity does not apply, and objects to the case manager's conduct in investigating the allegations of abuse. He contends that the FAP case manager was exercising quasi-judicial functions. However, the court disagrees; the case

---

[7] This provision was enacted as part of the Child Protective Act on August 22, 1990. See Guam Pub. L. 20-209:5. Although initially codified as Chapter 88 of Title 10 of the Guam Code Annotated, the entire Child Protective Act was later "renumbered and repositioned" to Title 19. *See* 19 G.C.A. §13206, Note.

manager's actions were part of "making a report" regarding the "suspected child abuse" of the Plaintiff's minor daughter and the immunity invested by § 13206 apply in this case to the case manager. However, the court finds the stronger argument is the discretionary function exception; even if the case manager erred in exercising his discretion, his actions would nonetheless fall within the discretionary function exception. *See Terbush*, 516 F.3d at 1129. Therefore, the court's holding herein is based on the discretionary function exception.

### E. Whether the Plaintiff's tort claims establish jurisdiction under the FTCA

Based on the foregoing, the court finds that it lacks subject matter jurisdiction, and must dismiss the case. For the sake of clarity, the grounds for dismissal of each count will be briefly discussed below.

#### 1. Count I

As to Count I-Invasion of Privacy, the Plaintiff asserts that in implementing the FAP, the Government "intruded" into his "private life and family matter in a manner highly offensive to a reasonable person" and "publically disclosed to [his] employers and supervisors private facts." Docket No. 25. The Government contends, and the court agrees, that the governmental actions in implementing the FAP are subject to the discretionary function exception.

#### 2. Count II

As to Count II-False Light Invasion of Privacy, the Plaintiff contends that the he was placed "before the public in a false light as a child abuser." Docket No. 25. In his pleadings and at the hearing, the Plaintiff made clear that he objects to being "labeled" as a child abuser and that he wanted his name off the Navy-Marine Corps Central Registry. *See* Docket No. 25.

The Government contends that the Plaintiff is actually making a claim of defamation/slander, which is barred by the FTCA. *See Lorenzo v. United States*, 719 F.Supp. 2d 1208 (S.D. Cal. 2010). The Government relies on Superior Court of Guam authority where the torts of defamation and invasion of privacy were treated similarly. *See* Docket No. 195 (citing *Lujan v. Just the Facts Coalition*, Super. Ct. Guam Case No. CV1625-02). Absent direct

guidance from the Supreme Court of Guam, the court is reluctant to extend this interpretation.

However, the court finds that dismissal of this count is appropriate because the governmental conduct in implementing the FAP constitute discretionary functions.

### 3. Count III[8]

As to Count III-Intentional Infliction of Emotional Distress, the Plaintiff argues that the governmental actions in implementing the FAP were "intentional, extreme and outrageous." Docket No. 25. The Government argues, and the court agrees, that the discretionary function exception applies here.

In addition, the court finds that the Plaintiff failed to satisfy the elements of this claim. This court has previously articulated the following elements of this claim: (1) extreme and outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional distress, on the plaintiff's part; and (4) actual and proximate causation of that emotional distress. *See Reyes v. United States*, Civil No. 08-00005, 2010 WL 5207583, at *5 (D. Guam Dec. 15, 2010) (citing Restatement (Second) of Torts § 46 (1965)).

Even under a very liberal interpretation, the actions of the Government could not be construed as "extreme or outrageous." The operation of the FAP in this instance, and the conduct of the FAP case manager included typical actions in the investigation of child abuse allegations. *See* Docket No. 208. The social workers, and presumably the CRC, obtained information from the victim and witnesses, medical and school records and personnel. These actions represent ordinary investigation of such allegations.

### 4. Count IV

As to and Count IV-Negligent Infliction of Emotional Distress, the court agrees that the discretionary function exception applies. Alternatively, as discussed above, the Plaintiff has not demonstrated that the governmental conduct was anything other than typical actions in the

---

[8] *See* note 1, *supra*.

investigation of child abuse allegations.

### III. CONCLUSION

Based on the foregoing, the court finds that the discretionary function under 28 U.S.C. § 2680(a) applies to this case, and thus, the Government has not waived its sovereign immunity. Accordingly, the court lacks subject matter jurisdiction and the case is hereby **DISMISSED**.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
   Chief Judge
**Dated: Aug 05, 2011**